07 CIV 9417

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - x

EUGENIA VI VENTURE HOLDINGS LTD.,          :

              Plaintiff,          :          07 Civ. _____

   -against-          :          **COMPLAINT**

MAPLEWOOD EQUITY PARTNERS, LP,          :

              Defendant.          :          PLAINTIFF DEMANDS
                            TRIAL BY JURY

- - - - - - - - - - - - - - - - x

OCT 19 2007
U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiff Eugenia VI Venture Holdings, Ltd. ("Eugenia"), by its undersigned attorneys, for its Complaint against defendant Maplewood Equity Partners, LP ("Maplewood"), alleges as follows:

**NATURE OF ACTION**

        1.    This is an action to enforce against Maplewood the obligations of two companies that Maplewood owns, controls, and dominates, and which are alter egos and/or instrumentalities of Maplewood, and for a declaratory judgment.

        2.    Eugenia made loans to AMC Computer Corp. ("AMC"), which loans, in turn, were guaranteed by AMC Investors I LLC and AMC Investors II LLC (together, the "AMC Investors"). AMC defaulted on its loans, and the AMC Investors refused to honor their guaranty.

        3.    Eugenia then commenced an action against the AMC Investors for payment of the guaranty, styled *Eugenia VI Venture Holdings v. AMC Investors LLC and AMC Investors II LLC*, New York

County Supreme Court, Index No. 603193/05 (the "Guaranty Action").

4.    Maplewood and its attorneys completely controlled and funded the AMC Investors' defense in the Guaranty Action. The Guaranty Action was hard fought over a period of two years. Eugenia was awarded summary judgment on liability and damages. Maplewood's attorneys appealed the quantum of damages awarded to Eugenia pursuant to its motion for summary judgment. The appellate court required a trial on the quantum of damages. Following that trial, the amount awarded to Eugenia was $10.7 million.

5.    Maplewood's attorneys have filed another notice of appeal regarding the quantum of damages and the AMC Investors have paid no portion of the $10.7 million to Eugenia.

6.    In an action related to the Guaranty Action, styled *Eugenia VI Venture Holdings v. AMC Investors LLC and AMC Investors II LLC*, New York County Supreme Court, Index No. 603245/07, Eugenia sought and received – over the strenuous opposition of Maplewood and its attorneys – access to the entirety of the AMC Investors' books and records.

7.    Maplewood's attorneys have continued to fight the AMC Investors' fight on every possible front. They have filed a motion for a protective order seeking to quash all post-judgment discovery in the Guaranty Action.

8.    At first glance, Maplewood's significant time and expense to protect the AMC Investors is puzzling because,

according to Maplewood itself, there is nothing for the AMC Investors to lose: "The AMC Investors are empty shell companies with no operations or assets that can satisfy the $10.7 million out-of-state judgment against them."

9.    The AMC Investors had no funding, offices, operations, meetings, minutes or activity of any kind.  In approximately seven years of existence, the Guarantors failed to file tax returns for six of those years.

10.    Thus, Maplewood's efforts on behalf of entities with no assets belies Maplewood's true intent – to protect itself by protecting its own alter ego.  Indeed, Maplewood has repeatedly conceded that the AMC Investors are "shells" and "affiliates of a Miami based equity fund complex known as Maplewood."

11.    The law, however, affords Maplewood no protection or insulation because of its self created notion of a "complex" of entities.  Rather, because the AMC Investors are mere instrumentalities of Maplewood, Maplewood is liable for the AMC Investors' debts, including their guaranty of AMC's obligations to Eugenia.

## PARTIES, JURISDICTION, AND VENUE

12.    Plaintiff is a company organized under the laws of the British Virgin Islands, with its principal place of business in the Cayman Islands.

13.    Defendant Maplewood is a limited partnership organized under the laws of Delaware, with its principal place of business in Florida.

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because this is an action between an alien and a citizen of the United States, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2), because a substantial part of the events giving rise to the claims occurred in this District.

### THE GUARANTY

16.    Maplewood is an investment fund for U.S. investors, and AMC is a portfolio company in which Maplewood has invested millions of dollars.

17.    Maplewood created the AMC Investors.  Maplewood then made its investment in AMC through the AMC Investors. Maplewood owns approximately 56% of the membership interests in AMC Investors LLC, and approximately 70% of the membership interests in AMC Investors II LLC.  Another Maplewood entity – Maplewood Equity Partners (Offshore) Ltd. – owns the remainder of the ownership interest in AMC Investors II LLC and 28% interest in AMC Investors LLC.   Thus, Maplewood and its affiliates owned the entirety of AMC Investors II LLC and in excess of 90% of AMC Investors LLC.

4

18.  Since the AMC Investors' inception, another Maplewood entity - Maplewood Management LP (Maplewood's general partner and limited partner) - has been the sole manager of the AMC Investors.

19.  Maplewood owned and controlled AMC.  Maplewood appointed the majority of AMC Board of directors and installed a Maplewood employee, Robert Reale, to run AMC.  Another Maplewood employee, Robert Glaser, was the de facto of AMC, even though he had no actual position at AMC.  The Board of Directors and Robert Reale all took direction from Glaser.

20.  In or around 2002, AMC's chief lender alerted Maplewood that it was discontinuing its funding of AMC because it had discovered that AMC was falsifying its accounts receivable.

21.  Maplewood employees, including Glaser and Reale, fraudulently induced Eugenia to step in and replace AMC's lender.  Maplewood misled and/or actively concealed the fact that AMC's current lender had discovered fraud at AMC. Maplewood made further fraudulent misrepresentations regarding the financial health and viability of AMC.

22.  Reasonably relying on this fraud, Eugenia made millions of dollars in loans to AMC pursuant to an Amended and Restated Credit Agreement (the "Credit Agreement"), dated as of January 30, 2003, among AMC, the AMC Investors, AMC Computer Corp. (NJ).

23.    To further induce Eugenia to enter into the Credit Agreement, Maplewood agreed that the AMC Investors would unconditionally guarantee to Eugenia the immediate payment and performance of all obligations of AMC.

24.    AMC is in default of the Credit Agreement and such default is continuing.

25.    The AMC Investors have no assets of value, are insolvent, and are unable to satisfy their obligations to Eugenia under the Guaranty.

### THE ALTER EGO RELATIONSHIP BETWEEN MAPLEWOOD AND THE AMC INVESTORS

26.    At all relevant times, the AMC Investors had no real or actual legal or independent significance and were mere instrumentalities of Maplewood.    Through its ownership interests in, and managerial control of, the AMC Investors, Maplewood completely controlled and dominated the AMC Investors.

27.    At all relevant times, the AMC Investors did not observe corporate procedures and requirements, maintain proper corporate records, or have any employees, operations or business.

28.    By court order, the AMC Investors were required to produce their books and records to Eugenia.    Notably, these books and records were sent to Eugenia by Maplewood's counsel. The entire set of books and record for both AMC Investors during their seven plus years of existence fit in one small box.

29.    The books and records consist almost entirely of closing documents from the AMC Investors investment in AMC in 2000 and from Eugenia's loan to AMC in 2003.

30.    There are no documents that evidence any employees, activities or operations of any kind.   Indeed, the AMC Investors did not even have actual offices and Maplewood simply provided its own address as that of the AMC Investors.

31.    Despite unconditionally guaranteeing many millions of dollars of loans from Eugenia to AMC, Maplewood failed to adequately capitalize the AMC Investors for their businesses, purposes, and potential liabilities, including the Guaranty.

32.    AMC investors never maintained assets of more than $25,000.   In fact, just this past month, Maplewood counsel alerted Eugenia that the AMC Investors were so derelict that the bank had deemed this $25,000 abandoned.   This is particularly egregious, since the AMC Investors have not paid dollar one of the millions they owe Eugenia pursuant to the judgment in the Guarantor Action.

### FIRST CAUSE OF ACTION
#### (Alter Ego/Misuse of Corporate Form)

33.    Plaintiff repeats and realleges paragraphs "1" through "32" above, as if fully set forth here.

34.    Maplewood, the holder of controlling membership interests in the AMC Investors, exercised complete domination and control over the AMC Investors.

35.   Maplewood and the AMC Investors operated as a single economic entity.

36.   The AMC Investors acted as the alter egos and/or instrumentalities of Maplewood and had no real legal independence or significance.

37.   The AMC Investors were inadequately capitalized for their intended business purposes and potential liabilities, including the Guaranty.

38.   Maplewood abused the AMC Investors' corporate forms with the intent to avoid liability to plaintiff for AMC's obligations under the Guaranty and this resulted in both injustice and unfairness to Eugenia.

39.   Maplewood is liable for the full amount of the AMC Investors' obligations to plaintiff under the Guaranty and/or Credit Agreement.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

40.   Plaintiff repeats and realleges paragraphs "1" through "32" above, as if fully set forth here.

41.   There is an actual, existing, and concrete controversy between Eugenia and Maplewood respecting the latter's responsibility for the liabilities of the AMC Investors.  The issuance of a declaratory judgment by the Court will assist the parties in the conduct of their affairs in that it will constitute an appropriate declaration of their rights, obligations, duties, and remedies with respect to such dispute.

A declaratory judgment is an efficient and effective manner for the determination of the questions raised in this action.

42.   The AMC Investors are the mere alter egos and/or instrumentalities of Maplewood.  The AMC Investors have no assets of value, are insolvent, and are unable to satisfy their obligations to plaintiff.  Maplewood is liable for the AMC Investors' obligations, including their obligations to plaintiff under the Guaranty.

WHEREFORE, plaintiff respectfully demands that judgment be entered in its favor and against defendant:

(a)   declaring that defendant is liable to plaintiff for the AMC Investors' obligations to plaintiff;

(b)   awarding plaintiff damages in an amount to be determined at trial, plus interest as provided by law;

(c)   awarding plaintiff the costs of this proceeding and reasonable attorneys' fees; and

(d)   awarding such other and further relief as this Court deems just and proper.

Dated:   October 19, 2007
         New York, New York


                              GIBSON, DUNN & CRUTCHER LLP


                              By:_____
                              Mitchell A. Karlan (MK-4413)
                              200 Park Avenue
                              47th Floor
                              New York, New York 10166-0193
                              Telephone: (212) 351-4000
                              Facsimile: (212) 351-4035

                              Attorneys for Plaintiff
                              Eugenia VI Venture Holdings,
                              Ltd.



100315525_1.DOC