# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

```
- - - - - - - - - - - - - - x
                            :
EUGENIA VI VENTURE HOLDINGS,  :
LTD.,                        :
                            :
            Plaintiff,       :        Index No. 603193/05
                            :
    -against-                :        **SUMMONS**
                            :
AMC INVESTORS, LLC and AMC    :        Date Filed: 9/8/05
INVESTORS II, LLC,           :
                            :
            Defendants.      :
                            :
- - - - - - - - - - - - - - x
```

TO:


AMC Investors, LLC                    AMC Investors II, LLC
c/o MapleWood Management LP           c/o MapleWood Management LP
255 Aragon Avenue, Suite 300          255 Aragon Avenue, Suite 300
Coral Gables, FL 33134                Coral Gables, FL 33134
Attention: Robert J. Reale           Attention: Robert J. Reale


**YOU ARE HEREBY SUMMONED** and required to serve upon

plaintiff's attorney answering papers to the Motion for Summary

Judgment in Lieu of Complaint in this action within 20 days

after service of this Summons upon you, exclusive of the day of

service.  If you fail to answer as indicated, summary judgment

will be taken against you by default for the relief demanded in

the motion.

Plaintiff designates New York County as the place of venue. Pursuant to an agreement between the parties, defendants have submitted to this venue

Dated:    September 8, 2005
          New York, New York

                              Respectfully submitted,

                              GIBSON, DUNN & CRUTCHER LLP

                              By: _Mitchell A. Karlan_
                              Mitchell A. Karlan
                              200 Park Avenue
                              47th Floor
                              New York, New York 10166-0193
                              Telephone: (212) 351-4000
                              Facsimile: (212) 351-4035

                              Attorneys for Plaintiff
                              Eugenia VI Venture Holdings, Ltd.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - x
                                      :
EUGENIA VI VENTURE HOLDINGS,          :
LTD.,                                 :
                                      :
            Plaintiff,                :        Index No. 603193/05
                                      :
     -against-                        :
                                      :        **NOTICE OF MOTION FOR**
AMC INVESTORS, LLC and AMC            :        **SUMMARY JUDGMENT IN**
INVESTORS II, LLC,                    :        **LIEU OF COMPLAINT**
                                      :
            Defendants.               :
                                      :
- - - - - - - - - - - - - - - x

**PLEASE TAKE NOTICE** that upon the Summons, dated September

8, 2005, and the Memorandum of Law in Support of Motion for

Summary Judgment in Lieu of Complaint dated September 8, 2005,

the Affirmation of Mitchell A. Karlan in Support of the Motion

dated September 8, 2005, and the Affidavit of Stephen C. Bell in

Support of the Motion dated September 7, 2005, plaintiff will

move this Court at the New York County Courthouse, 60 Centre

Street, Motion Support Courtroom, Room 130, New York, New York,

on October 3, 2005, at 9:30 a.m., or as soon thereafter as

counsel can be heard, for an Order granting summary judgment in

lieu of complaint pursuant to CPLR § 3213 in favor of plaintiff

and against defendants in the amount of at least $8,906,775.00,

plus default interest from January 30, 2003 and for such other

and further relief as the Court may deem just and proper, upon

the ground that this action is based upon an instrument for the payment of money only which is now due and payable.

**PLEASE TAKE FURTHER NOTICE** that all answering papers shall be served on the undersigned within 20 days after service of the **motion papers** upon you.

Dated:  September 8, 2005
        New York, New York

                              Respectfully submitted,

                              GIBSON, DUNN & CRUTCHER LLP

                              By: _____
                              Mitchell A. Karlan
                              200 Park Avenue
                              47th Floor
                              New York, New York 10166-0193
                              Telephone: (212) 351-4000
                              Facsimile: (212) 351-4035

                              Attorneys for Plaintiff
                              Eugenia VI Venture Holdings, Ltd.

TO:

AMC INVESTORS, LLC and
AMC INVESTORS II, LLC
c/o MapleWood Management LP
255 Aragon Avenue, Suite 300
Coral Gables, FL 33134
Attention: Robert J. Reale

Chester B. Salomon, Esq.
Stevens & Lee
485 Madison Avenue. 20th Floor
New York, New York  10022
Attorneys for Defendants
AMC INVESTORS, LLC and
AMC INVESTORS II, LLC

# EXHIBIT E

( S <

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - x

EUGENIA VI VENTURE HOLDINGS,            Index No. 600021/06
LTD.

      Plaintiff,                    **SUMMONS**

  -against-

MAPLEWOOD EQUITY PARTNERS LP,

    Defendant.

- - - - - - - - - - - - - - - x


TO THE ABOVE-NAMED DEFENDANT

    YOU ARE HEREBY SUMMONED and required to serve upon

plaintiff's attorney an answer to the Complaint in this action

within twenty days after the service of this Summons, exclusive

of the day of service, or within thirty days after service is

complete if this Summons is not personally delivered to you

within the State of New York.  In case of your failure to

answer, judgment will be taken against you by default for the

relief demanded in the Complaint.

Plaintiff designates New York County as the place of venue.

Dated:  January 4, 2006
        New York, New York

                          Respectfully submitted,

                          GIBSON, DUNN & CRUTCHER LLP

                          By: _Mitchell A. Karlan_____
                          Mitchell A. Karlan
                          200 Park Avenue
                          47th Floor
                          New York, New York 10166-0193
                          Telephone: (212) 351-4000
                          Facsimile: (212) 351-4035

                          Attorneys for Plaintiff
                          Eugenia VI Venture Holdings, Ltd.

TO:  Maplewood Equity Partners LP
     c/o Corporation Service Company, Registered Agent
     2711 Centerville Road, Suite 400
     Wilmington, Delaware 19808

NY 80336780.5

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - x

EUGENIA VI VENTURE HOLDINGS,
LTD.

      Plaintiff,

  -against-

MAPLEWOOD EQUITY PARTNERS LP,

      Defendant.

- - - - - - - - - - - - - - x

Index No. 600021/06

COMPLAINT

Date filed: 1/4/06

Plaintiff Eugenia VI Venture Holdings, Ltd., by its attorneys, Gibson, Dunn & Crutcher LLP, for its Complaint against defendant MapleWood Equity Partners LP, alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for declaratory judgment and to enforce against defendant the obligations of two companies that defendant controls and which are alter egos and/or instrumentalities of defendant.

2.    Plaintiff made loans to AMC Computer Corp. ("AMC") which, in turn, were guaranteed by two companies, AMC Investors I LLC and AMC Investors II LLC (together the "AMC Investors"). AMC defaulted on its loans, and plaintiff commenced an action against the AMC Investors for payment of the guaranty.  However, the AMC Investors are not able to satisfy their obligations.

For the reasons set forth below, defendant is liable for the AMC Investors' debts, including their guaranty of AMC's obligations to plaintiff.

### THE PARTIES

3.   Plaintiff is a company organized under the laws of the British Virgin Islands, with its principal place of business in the Cayman Islands.

4.   Defendant is a limited partnership organized under the laws of Delaware, with its principal place of business in Florida.

5.   Defendant owns approximately 56% of the membership interests in AMC Investors LLC, and approximately 70% of the membership interests in AMC Investors II LLC.

6.   MapleWood Management LP is defendant's general partner and limited partner.  MapleWood Management LP also is the manager of the AMC Investors.

### VENUE

7.   Venue is proper in this Court pursuant to CPLR 503.

### FACTUAL ALLEGATIONS

A.   The AMC Investors' Obligations to Plaintiff

8.   Defendant is an investment fund for U.S. investors, and AMC is a portfolio company in which defendant has invested.

9.   Pursuant to an Amended and Restated Credit Agreement (the "Credit Agreement"), dated as of January 30, 2003, among

2

AMC, the AMC Investors, AMC Computer Corp. (NJ), and plaintiff, plaintiff made millions of dollars in loans to AMC. Pursuant to a guaranty agreement (the "Guaranty"), dated as of January 30, 2003, the AMC Investors unconditionally guaranteed to plaintiff the immediate payment and performance of all obligations of AMC under the Credit Agreement.

10. AMC is in default of the Credit Agreement and such default is continuing. In September 2005, plaintiff commenced an action in this Court against the AMC Investors captioned *Eugenia VI Venture Holdings, Ltd. v. AMC Investors LLC and AMC Investors II LLC*, Index No. 603195/05, for payment of the Guaranty.

11. The AMC Investors have no assets of value, are insolvent, and are unable to satisfy their obligations to plaintiff under the Guaranty.

**B. The Alter Ego Relationship Between Defendant and the AMC Investors**

12. Through its ownership interests in the AMC Investors, defendant effectively controlled the AMC Investors.

13. Upon information and belief, at all relevant times, defendant and the AMC Investors did not observe corporate formalities and did not maintain proper corporate records. The AMC Investors did not have any employees, operations or business.

3

14. At all relevant times, defendant failed to adequately capitalize the AMC Investors for their businesses, purposes, and potential liabilities, including the Guaranty. The AMC Investors had no assets, revenues or income, and no paid in capital.

### FIRST CAUSE OF ACTION
### (Alter Ego/Misuse of Corporate Form)

15. Plaintiff repeats the allegations of paragraphs 1 through 14 above as if set forth here in full.

16. Defendant, the holder of controlling membership interests in the AMC Investors, exercised complete domination and control over the AMC Investors.

17. Defendant and the AMC Investors operated as a single economic entity.

18. The AMC Investors acted as the alter egos and/or instrumentalities of defendant.

19. The AMC Investors were inadequately capitalized for their intended business purposes and potential liabilities, including the Guaranty.

20. Defendant abused the AMC Investors' corporate forms with the intent to avoid liability to plaintiff for AMC's obligations under the Guaranty. Defendant's fraud worked an injustice on plaintiff and caused plaintiff to lose millions of dollars.

4

21.  Defendant is liable for the full amount of the AMC Investors' obligations to plaintiff under the Guaranty and/or Credit Agreement.

### SECOND CAUSE OF ACTION
### (Declaratory Judgment)

22.  Plaintiff repeats and realleges paragraphs 1 through 21 above, as if set forth here in full.

23.  Defendant, through its actions, abused the AMC Investors' corporate forms to avoid liability to plaintiff under the Guaranty and/or Credit Agreement.  The AMC Investors are the mere alter egos and/or instrumentalities of defendant. Moreover, the AMC Investors have no assets of value, are insolvent, and are unable to satisfy their obligations to plaintiff.  Accordingly, defendant is liable for the AMC Investors' obligations, including their obligations to plaintiff under the Guaranty.

5

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully demands that judgment be entered in its favor and against defendant:

(a)  declaring that defendant is liable to plaintiff for the AMC Investors' obligations to plaintiff;

(b) awarding plaintiff damages in an amount to be determined at trial, plus interest as provided by law;

(c) for costs of this proceeding and reasonable attorneys' fees; and

(d) awarding such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          January 4, 2006

                        Respectfully submitted,

                        GIBSON, DUNN & CRUTCHER LLP

                        By: _Mitchell A. Karlan_
                        Mitchell A. Karlan
                        200 Park Avenue
                        47th Floor
                        New York, New York 10166-0193
                        Telephone: (212) 351-4000
                        Facsimile: (212) 351-4035

80146712_5 DOC

6

# EXHIBIT F

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____ **BERNARD J. FRIED** _____          **FBEM**          PART _60_

_____   *Justice*

CASITA, LP

_____ PLAINTIFF          INDEX NO.          #603525-2005

                                               MOTION DATE _____

- v -

MAPLEWOOD Equity Partners

_____ DEFENDANT          MOTION SEQ. NO.   #002

                                               MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:**    ☐ Yes    ☐ No

Upon the foregoing papers, it is ordered that this motion

This motion is decided in accordance with the accompanying memorandum decision.

SO ORDERED

FILED
FEB 22 2006
NEW YORK
COUNTY CLERK'S OFFICE

Dated: _____ 2/21/06 _____          _____ J.S.C.   **BERNARD J. FRIED** J.S.C.

**Check one:**   ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

**Check if appropriate:**   ☐ DO NOT POST

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  IAS PART 60

**FBEM**

-------------------------------------------------------------------X

CASITA, LP,

Plaintiff,

- against -

Index No. 603525/2005

MAPLEWOOD EQUITY PARTNERS (OFFSHORE)
LTD.,

Defendant.

-------------------------------------------------------------------X

**APPEARANCES:**

For Plaintiff:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166-0193
(Mitchell A. Karlan, Richard Falek,
Joseph Furst)

For Defendant:

Stevens & Lee, P.C.
485 Madison Avenue
20th Floor
New York, New York 10022-5803
(Chester B. Salomon, Constantine D.
Pourakis)

Akerman Senterfitt
One Southeast Third Avenue
28th Floor
Miami, Florida 33131-1714
(Brian P. Miller, pro hac vice)

FILED

FEB 2 2 2006

NEW YORK
CLERK'S OFFICE

**FRIED, J.:**

Defendant moves for an order disqualifying Gibson, Dunn & Crutcher LLP (GDC)
from continuing to act as plaintiff's counsel in this action.

Plaintiff Casita, LP (Casita) is a shareholder in defendant MapleWood Equity
Partners (Offshore) Ltd. (hereinafter, the Offshore Fund), an investment fund organized
under the laws of the Cayman Islands.  In this action, Casita alleges that a "capital call" made
upon it by the Offshore Fund is invalid, and seeks, inter alia, an injunction prohibiting the
Offshore Fund from taking any action against Casita as a result of its nonpayment of the
capital contribution requested by the capital call.

Beginning in 1998, certain attorneys at Chadbourne & Parke LLP (Chadbourne) – including Dennis Friedman, Esq., Scott Kislin, Esq., and Hyeon Lee, Esq. (collectively, the Individual Attorneys) -- performed various legal services for MapleWood Partners LP (MapleWood Partners), the partnership which created, and acts as the "Advisor" to, the Offshore Fund.  The Individual Attorneys allegedly represented MapleWood Partners in connection with the formation of the Offshore Fund, and a related private equity fund known as MapleWood Equity Partners L.P. (the U.S. Fund; collectively, with the Offshore Fund, the Funds).  Among other things, the Individual Attorneys allegedly drafted both the articles of association for the Offshore Fund (the Articles of Association), and the subscription agreement (the Subscription Agreement), pursuant to which investors purchased shares of stock of the Offshore Fund.  The Individual Attorneys also allegedly formed an entity known as AMC Investors, LLC (AMC Investors), through which some of the money raised by the Funds in a private placement was invested in a company named AMC Computer Corp. (AMC Computer).  The Funds purchased membership interests in AMC Investors, which, in turn, owns common stock of AMC Computer.

In September 2000, a number of attorneys, including the Individual Attorneys, moved from Chadbourne to GDC.  While employed by GDC, in late 2000 and in 2001, the Individual Attorneys continued to advise MapleWood Partners in connection with matters relating to the initial investment in AMC Computer.  In or around April 2001, GDC also allegedly represented MapleWood Partners in connection with a subsequent equity investment in AMC Computer, which was effected by the Funds' purchase of membership interests in a newly created company known as AMC Investors II, LLC (collectively, with AMC Investors, the AMC Investors Entities).  Hyeon Lee allegedly left GDC in or around February 2005.[1]

---

[1]

Lee is allegedly currently employed by a company which provides various services,

2

Casita has allegedly invested more than $20 million in the Offshore Fund, pursuant to the Subscription Agreement, and approximately $2.5 million in the AMC Investors Entities directly. Eugenia VI Venture Holdings, Ltd. (Eugenia), a company affiliated with or related to Casita, also loaned money to AMC Computer, pursuant to a loan agreement dated as of September 4, 2001. In or around September 2002, a restructuring of AMC Computer was contemplated, and AMC Computer began to negotiate a new credit facility with Eugenia.

Barbara Becker, Esq.,-- another attorney who had moved from Chadbourne to GDC in September 2000 -- sent a letter to MapleWood Partners, AMC Computer, and Casita, dated September 19, 2002 (the Conflict Waiver Agreement), which states, in part:

> ...[GDC] has been asked to represent Casita, L.P. in connection with a proposed restructuring (the "Transaction") of AMC Computer Corp. ("AMC") currently being contemplated by MapleWood Partners LP and its affiliates ("MapleWood") and Casita, L.P. As you know, [GDC] also represents MapleWood in a number of matters unrelated to the Transaction and certain attorneys at [GDC] have represented MapleWood in connection with its initial acquisition of AMC as well as certain subsequent matters related to AMC. In addition, [GDC] has represented affiliates of Casita, L.P. (Casita, L.P. together with its affiliates, "Casita") in a number of matters unrelated to the Transaction. ... .
>
> Our representation of Casita in the Transaction presents a conflict of interest given our representation of MapleWood in other matters. ... .
>
> This letter is to confirm that MapleWood, AMC and Casita consent to [GDC's] representation of Casita in connection with the Transaction. ... .
>
> In the event that any litigation or dispute resolution proceedings should arise among MapleWood, Casita, and AMC in connection with the Transaction, we would not act as counsel to any of such parties.

(Conflict Waiver Agreement, Becker Decl., Ex. A., at 1-2.) It appears that the Conflict Waiver Agreement was executed and returned to GDC by, at least, MapleWood Partners and AMC Computer (see Miller 2/10/06 Letter, Ex. A).

In November 2002, certain investors in, and creditors of, AMC Computer entered

---

including financial advisory services, to Casita (see Kislin Affirm., ¶ 4 n 1).

3

into an agreement with AMC Computer (the Debt Restructuring Agreement) which was intended, by its own terms, "to restructure the rights and obligations of the parties in order to make [AMC Computer] more attractive for future investors and future sources of debt financings, and to increase the value of [AMC Computer]" (Debt Restructuring Agreement, Karlan Affirm., Ex. D, at 1). In January 2003, Eugenia and AMC Computer entered into an amended and restated credit agreement (the Amended Credit Agreement) (*see* Augustin Affid., Ex. B), whereby they agreed to modify the earlier loan agreement between those parties.

AMC Computer apparently encountered financial difficulties and, in May 2005, Eugenia allegedly declared AMC Computer to be in default under the Amended Credit Agreement. According to the Offshore Fund, Eugenia subsequently instituted a number of actions "in both state and federal court against MapleWood Partners' affiliates and certain officers and directors of AMC Computer, alleging breach of contract, fraud, and breach of fiduciary duty" (Def. Mem. of Law, at 5) (collectively, the Eugenia Actions). AMC Computer's assets are evidently being liquidated.

Casita brought this action in October 2005, alleging that the Offshore Fund made an improper "capital call" upon Casita, by letter dated September 14, 2005 (the Capital Call Letter), which asked Casita to contribute approximately $700,000. The complaint[2] alleges that Casita sent a letter to the Offshore Fund, dated September 28, 2005, setting forth certain errors and discrepancies contained in the Capital Call Letter, and asking for clarification, but that the Offshore Fund did not answer Casita's letter. Casita did not pay the capital call by its stated due date, and the Offshore Fund, by letter dated September 29, 2005 (the Notice

---

[2]

All references to the "complaint" contained in this decision and order are to the amended complaint, which was filed by Casita, with leave of court, on or about November 17, 2005. According to the Offshore Fund, the amendment of the complaint after the parties submitted papers on the instant motion does not "materially impact[]" the court's determination of the motion (*see* Salomon 11/23/05 Letter, at 1).

of Default), asserted that Casita was in default under the Subscription Agreement and under the Articles of Association.

The complaint asserts three causes of action, and seeks a judgment:  declaring that the Capital Call Letter and the Notice of Default are invalid; granting Casita a preliminary and permanent injunction which enjoin the Offshore Fund from acting upon any alleged default by Casita under the Subscription Agreement and/or the Articles of Association; tolling the time period during which Casita may cure the aforementioned alleged default(s); and awarding Casita compensatory and punitive damages.

The Offshore Fund asserts that GDC should be disqualified from representing Casita in this action because such representation is:  (1) in violation of a provision contained in the Conflict Waiver Agreement; and (2) barred by application of (a) the well-established rule that a lawyer, having represented a client in a matter, may not thereafter represent another client with interests materially adverse to the interests of the former client in a substantially related matter, in conjunction with (b) principles of imputed law firm disqualification.  The Offshore Fund's motion is granted, because disqualification, although not warranted on the first ground, is warranted on the second.

The Conflict Waiver Agreement contains a provision (the Non-Representation Provision), already quoted above, in which GDC represented that, "[i]n the event that any litigation or dispute resolution proceedings should arise among MapleWood, Casita, and AMC in connection with the Transaction, we would not act as counsel to any of such parties" (Conflict Waiver Agreement, Becker Decl., Ex. A, at 2).  The Offshore Fund's argument that the Non-Representation Provision should be applied to proscribe GDC's representation of Casita in this action, and Casita's argument that it should not, are based upon the different interpretations the parties give to the term "affiliate[]" and the phrase "arise ... in connection with the Transaction," as they are used in the Conflict Waiver Agreement.  The Offshore Fund asserts that it is included in the term "MapleWood," as that term is used in the Non-

5

Representation Provision, because the Conflict Waiver Agreement defines "MapleWood" to mean "MapleWood Partners LP and its affiliates," and because the Offshore Fund is an affiliate of MapleWood Partners.

However, even assuming that to be true, the Non-Representation Provision does not bar GDC's representation of Casita in this action, because this action does not "arise ... in connection with the Transaction." The Conflict Waiver Agreement defines "Transaction" to mean "a proposed restructuring ... of AMC Computer Corp. ... currently [i.e., on or about September 19, 2002] being contemplated by MapleWood Partners LP and its affiliates ... and Casita, L.P." (*id.* at 1). The parties disagree as to whether the term "Transaction" was intended to refer to the debt restructuring which was embodied in the November 2002 Debt Restructuring Agreement, as Casita argues, or the loan modification which was embodied in the January 2003 Amended Credit Agreement, as the Offshore Fund argues. However, even according the term "Transaction" a broad construction which encompasses both the debt restructuring and the loan modification, the Offshore Fund has failed to establish that this action arises in connection with either or both of those transactions.

The Offshore Fund asserts that this action relates to the Amended Credit Agreement because: (1) the proceeds of the capital call which is the subject of this action would be used primarily to pay expenses -- including a bank guaranty obligation and indemnification costs relating to the defense of the Eugenia Actions -- which resulted from AMC Computer's default under the Amended Credit Agreement, and consequent demise; and (2) Casita is refusing to honor the capital call because a substantial portion of the proceeds from the capital call would be used to defend the Eugenia Actions against Casita's purported affiliate, Eugenia. However, the fact that this action may have some relation to, or stand in some causal sequence of events with, AMC Computer's default under the Amended Credit Agreement, is not alone sufficient to establish that this action arises in connection with the transaction embodied in that agreement. This is not an action which seeks to enforce any

term or provision of, or obligation created by, the Amended Credit Agreement, or which raises any issue of interpretation with regard to that agreement, or which alleges any wrongful conduct in connection with the making of that agreement. Indeed, the complaint makes no reference to the Amended Credit Agreement.

Rather, this action arises, more accurately, in connection with the Subscription Agreement and the Articles of Association, because the complaint's allegations seek a determination primarily concerning the parties' respective rights and obligations under those documents. The complaint alleges, inter alia: (1) that Casita invested in the Offshore Fund pursuant to the Subscription Agreement; (2) that the Offshore Fund made the disputed capital call pursuant to the Subscription Agreement; (3) that the Offshore Fund breached the Subscription Agreement by issuing the Capital Call Letter and the Notice of Default, because the Capital Call Letter seeks reimbursement of expenses for which Casita cannot be held responsible; (4) that, pursuant to specific provisions of the Subscription Agreement and the Articles of Association, Casita is not required to pay the capital call; and (5) that Casita's refusal to honor the capital call resulted in the Offshore Fund's declaring that Casita was in default under the Subscription Agreement and the Articles of Association (*see* Complaint, ¶¶ 1, 6, 7, 9, 10, 15). The complaint seeks, in addition to monetary damages: a declaration that the Capital Call Letter was invalid and without effect under the Subscription Agreement; an injunction prohibiting the Offshore Fund from acting upon any purported default by Casita under the Subscription Agreement and/or the Articles of Association; and a tolling of Casita's time to cure any default by it under the Subscription Agreement and/or the Articles of Association (*see id.*, at 6-7).

The Offshore Fund contends that the grounds asserted by Casita in the complaint for refusing to comply with the capital call are merely pretextual, and that Casita's real motive for refusing to comply is that Casita does not want to contribute funds which will be used to defend against the Eugenia Actions. However, I must deem this action to arise in connection

with those matters which are actually pleaded in the complaint, as the bases of the parties' dispute, rather than in connection with matters which, not being pleaded, have no ostensible connection with this action. Accordingly, this is not an action which arises "in connection with the Transaction," as that phrase is used in the Non-Representation Provision, and the provision does not preclude GDC's representation of Casita in this action.

This conclusion does not finally determine the issue of whether GDC may represent Casita in this action. Rather, I conclude that it cannot because: Kislin, while he was associated with Chadbourne, was extensively involved in drafting the Articles of Association and the Subscription Agreement and, allegedly, in negotiating the terms of the Subscription Agreement on the Offshore Fund's behalf with Casita; this action raises issues which are substantially related to the subject of that prior representation, inasmuch as this action principally involves disputes concerning the parties' respective rights and obligations under the foregoing documents; and Casita has failed to rebut the presumption that Kislin's disqualification should be imputed to GDC.

Kislin would be disqualified from representing Casita in this action, if he attempted to do so, for the following reasons. A party demonstrates a basis for disqualification of its adversary's lawyer, on the ground of the lawyer's prior representation of the party, where the party establishes: "(1) the existence of a prior attorney-client relationship between the ... party and opposing counsel, (2) that the matters involved in both representations are substantially related, and (3) that the interests of the present client and former client are materially adverse" (*Tekni-Plex, Inc. v Meyner and Landis*, 89 NY2d 123, 131 [1996]; *see also Jamaica Pub. Serv. Co. v AIU Ins. Co.*, 92 NY2d 631, 636 [1998]). Under such circumstances, the presumption that the lawyer should be disqualified is irrebuttable (*see Tekni-Plex, Inc. v Meyner and Landis*, 89 NY2d at 131-132; *Solow v W.R. Grace & Co.*, 83 NY2d 303, 313 [1994]).

8

First, the Offshore Fund has submitted sufficient evidence that an attorney-client relationship existed between Kislin, while he was at Chadbourne, and the Offshore Fund. The Offshore Fund asserts in its moving papers that it was a client of the Individual Attorneys (*see* Def. Mem. of Law, at 2). In support of that assertion, the Offshore Fund has submitted an affidavit by Robert Glaser, who has allegedly been an employee of MapleWood Partners since it was formed, and who, according to the Offshore Fund, is also the managing member of the company which is the general partner of MapleWood Partners (*see* Transcript of 11/10/05 Oral Argument [hereinafter, Transcript], at 13). Glaser avers that the Individual Attorneys represented MapleWood Partners in connection with the formation of the Offshore Fund, and that the Individual Attorneys, among other things, drafted the Subscription Agreement and the Articles of Association for the Offshore Fund (*see* Glaser 10/13/05 Affid., ¶¶ 3, 4). Glaser further asserts: that the Individual Attorneys represented the Offshore Fund as well as MapleWood Partners; that MapleWood Partners, in its capacity as the "Advisor" to the Offshore Fund, communicated with the Individual Attorneys on many occasions for the purpose of obtaining legal advice on behalf of the Offshore Fund; and that the Individual Attorneys assisted him in identifying, and performing due diligence with respect to, AMC Computer and other companies in which the Offshore Fund might invest (*see id.*, ¶¶ 3-5, 8).

The Offshore Fund has also submitted, for in camera inspection,[3] copies of certain invoices which were allegedly rendered to MapleWood Partners by Chadbourne and GDC between 1998 and 2002. One of the invoices, prepared by Chadbourne, includes time sheets covering 800.60 hours of work performed by Chadbourne employees, together with a summary sheet which indicates that the work was performed in connection with "**Offshore Fund Documentation**" (emphasis in original), between October 1, 1996 and December 30,

---

[3]

These documents should be retrieved from the Clerk in Part 60, and preserved during the pendency of this action.

1998. The time sheets indicate that Kislin billed 260.50 hours of the 800.60 hour total, and that he was extensively involved in preparing the organizational documents for the Offshore Fund -- including the Articles of Association and the Subscription Agreement -- in that he both worked on the documents himself, and also engaged in regular communications with other Chadbourne attorneys concerning those documents.[4]

Casita apparently does not dispute the Offshore Fund's contention that Kislin participated in the drafting of the Offshore Fund's Articles of Association and the Subscription Agreement (Pl. Mem. of Law, at 11; Transcript, at 50). Nor, despite Casita's repeated assertions that the Offshore Fund was never a client of **GDC**, does Casita directly dispute the Offshore Fund's contention that it was represented by **Kislin**, while he was still at Chadbourne.[5] An affirmation submitted by Kislin, in support of Casita's opposition to the

---

[4]

The time sheets reflect only .50 hours billed by "D.J. Friedman," which was apparently spent discussing documents relating to the Offshore Fund.

[5]

Indeed, the Conflict Waiver Agreement appears to contain an admission by GDC that the Individual Attorneys did represent the Offshore Fund, at least before they moved from Chadbourne to GDC. The agreement, as previously indicated, states that "certain attorneys at [GDC] have represented MapleWood in connection with *its* initial acquisition of [AMC Computer]" (emphasis added), where the term "MapleWood" is defined to mean "MapleWood Partners LP and its affiliates" (Conflict Waiver Agreement, Becker Decl., Ex. A, at 1). However, the evidence contained in the record appears to indicate that it was only the Offshore Fund and the U.S. Fund which actually acquired interests in AMC Computer, whereas MapleWood Partners itself did not acquire such an interest. Thus, the "it" which Becker refers to as having been represented by "certain attorneys at [GDC]" would presumably refer to the Offshore Fund and the U.S. Fund. The "initial acquisition" of AMC Computer appears to have occurred before the Individual Attorneys moved from Chadbourne to GDC in September 2000.

Insofar as the record contains evidence suggesting that GDC may have represented the Offshore Fund in certain matters, after September 2000, the Offshore Fund does not appear to argue that any such representation involved matters which are substantially related to GDC's representation of Casita in this action.

10

Offshore Fund's motion to disqualify, does not dispute the Offshore Fund's assertions that he participated in the drafting of the Articles of Association and the Subscription Agreement and that, while he was at Chadbourne, he represented the Offshore Fund.

It appears that, insofar as the Offshore Fund had legal matters which needed to be performed prior to September 2000, those matters were performed by Chadbourne attorneys, including Kislin, at the direction of MapleWood Partners.   It appears, further, that MapleWood Partners and the Offshore Fund were not "distinct and separate entities for representation purposes" (*Hartford Acc. and Indem. Co. v RJR Nabisco, Inc.*, 721 F Supp 534, 540 [SD NY 1989]), and that there was a "sufficient unity of interest" between MapleWood Partners and the Offshore Fund as would make it difficult to ascertain whether Chadbourne, and Kislin, were representing both of those entities, or just MapleWood Partners (*see Moss v Moss Tubes, Inc.*, 1998 WL 641362, *5 [ND NY, Sept. 9, 1998]).  Thus, whether or not the relationship between the Offshore Fund and Kislin, while he was at Chadbourne, was "in all respects that of attorney and client" (*Glueck v Jonathan Logan, Inc.*, 653 F2d 746, 748-749 [2d Cir 1981]), there existed, at the very least, "sufficient aspects of such relationship to trigger inquiry into the potential conflict arising from [Casita's] attorney[s'] role herein" (*Wall St. Assoc. v Brodsky*, 227 AD2d 301, 302 [1st Dept 1996] [citing *Glueck v Jonathan Logan, Inc.*, 653 F2d at 748-749]).

It is clear, secondly, that the matters involved in Kislin's prior representation of the Offshore Fund and the matters involved in GDC's representation of Casita in this action are substantially related.  As previously set forth, Kislin participated extensively in the drafting of the Articles of Association and the Subscription Agreement.  Glaser's affidavit asserts, additionally: that he "had numerous communications with the [Individual Attorneys]" while they were drafting the Articles of Association and the Subscription Agreement; that "they provided [him] with legal advice concerning the interpretation and effect of the Articles [of Association] and the Subscription Agreement, including specific legal advice concerning the

11

circumstances under which a Member could be declared to be in default of the Articles [of Association] and the effect thereof"; that the Individual Attorneys "negotiated on our behalf the language of the Subscription Agreement with various investors"; and that he "generally recall[s] that [the Individual Attorneys] negotiated [the Subscription Agreement] with Casita" (Glaser 10/13/05 Affid., ¶¶ 4, 6). Kislin's affirmation, submitted in opposition to the Offshore Fund's motion to disqualify GDC, does not specifically dispute, or even acknowledge, any of the foregoing assertions.

Casita's complaint in this action alleges that the Capital Call Letter and the Default Letter are invalid because they were issued in breach of the Subscription Agreement and the Articles of Association, and seeks, primarily, a determination as to the parties' respective rights and obligations under those two documents. Not only was Kislin extensively involved in the drafting of the documents, but the Individual Attorneys allegedly negotiated the Subscription Agreement with Casita, on the Offshore Fund's behalf. Accordingly, the two representations are substantially related (*see e.g. Tekni-Plex, Inc. v Meyner and Landis*, 89 NY2d at 135 [finding a substantial relationship between a prior representation, where the law firm was involved in negotiating an agreement, and a current representation, where the law firm was representing a client in a proceeding of which certain of the agreement's provisions were the subject]; *Credit Index, L.L.C. v Riskwise Intl. L.L.C.*, 192 Misc 2d 755, 765-766 [Sup Ct, NY County] [finding a substantial relationship between a prior representation, which involved the drafting of an agreement, and a current representation, which involved claims under that agreement and another closely related agreement], *affd* 296 AD2d 318 [1st Dept 2002]; *Ulster Scientific, Inc. v Guest Elchrom Scientific AG*, 181 F Supp 2d 95, 104 [ND NY 2001] [finding two representations to be substantially related where one involved the negotiation and drafting of an agreement, and the other involved a dispute concerning the terms of the agreement]; Restatement [Third] of the Law Governing Lawyers § 132 [1] [stating that "[a] current matter is substantially related to [an] earlier matter if ... the current

matter involves the work the lawyer performed for the former client]).

It is also clear, finally, that the interests of Casita and the interests of the Offshore Fund are materially adverse. Casita alleges in this action that the Offshore Fund breached the Subscription Agreement and the Articles of Association by issuing the Capital Call Letter, and seeks a declaration that Casita need not comply with the capital call. The Offshore Fund presumably wishes to enforce the capital call, or to take action adverse to Casita on the basis of the latter's purported default in failing to comply with the capital call.

The Offshore Fund's satisfaction of the three foregoing criteria raises an irrebuttable presumption that, if Kislin had attempted to represent Casita in this action against the Offshore Fund, he would be disqualified from doing so (see *Tekni-Plex, Inc. v Meyner and Landis*, 89 NY2d at 131-132; *Solow v W.R. Grace & Co.*, 83 NY2d at 313). Further, where one attorney is disqualified as a result of having represented a client in an earlier matter while the attorney was at a former law firm, and then subsequently attempting to represent another against the client in a substantially related matter, a rebuttable presumption arises that the entirety of the attorney's current firm must also be disqualified (see *Kassis v Teacher's Ins. and Annuity Assn.*, 93 NY2d 611, 617 [1999]; *Solow v W.R. Grace & Co.*, 83 NY2d at 313).[6]

---

[6]

The Court of Appeals has stated that no such presumption of imputed disqualification will arise if either: (1) "the moving party fails to make any showing of a risk that the attorney changing firms acquired any client confidences in the prior employment"; or (2) "the nonmoving party disproves that the attorney had any opportunity to acquire confidential information in the former employment" (*Kassis v Teacher's Ins. and Annuity Assn.*, 93 NY2d at 617). However, the Court of Appeals noted that, "[i]n either [such] case, it would not have been established that the side-switching attorney actually 'represented the former client in a matter' (DR 5-108 [22 NYCRR 1200.27])" (*id.*).

The latter statement presumably indicates that where, as here, a movant establishes that the "side-switching" attorney actually did "represent[] the former client in a matter," the movant has thereby also made a sufficient "showing of a risk that the attorney changing firms acquired ... client confidences in the prior employment," and the nonmoving party will be unable to "disprove[]" that the attorney had any opportunity to acquire confidential information in the former employment." In any event, it is independently concluded:

In order to rebut the presumption that the entirety of a "side-switching" attorney's current firm must be disqualified, "the party seeking to avoid disqualification must prove that any information acquired by the disqualified lawyer is unlikely to be significant or material in the litigation" (*Kassis v Teacher's Ins. and Annuity Assn.*, 93 NY2d at 617; *see also Nimkoff v Nimkoff*, 18 AD3d 344, 346 [1st Dept 2005]).   In determining "whether the presumption of shared confidences and disqualification has been rebutted, consideration must be given to the particular facts of each case" (*Kassis v Teacher's Ins. and Annuity Assn.*, 93 NY2d at 617).   Here, given Kislin's extensive participation in the drafting of the very documents which are the subject of this action, and the Individual Attorneys' alleged role in negotiating the Subscription Agreement with Casita on the Offshore Fund's behalf, Casita's burden in rebutting the presumption that Kislin "acquired material confidences [in the course of his prior representation of MapleWood Partners and the Offshore Fund] is especially heavy" (*id.* at 619).

Casita has failed to satisfy that burden.  Kislin's affirmation, submitted in support of Casita's opposition to the Offshore Fund's motion to disqualify, makes no reference to his role in the drafting and/or negotiation of the Subscription Agreement and the Articles of Association, and proffers no explanation as to why he should be deemed not to have acquired any information or confidences, in the course of that prior representation, which would be significant or material in this action.   Concerning his work on behalf of the Offshore Fund, Kislin acknowledges merely that he was affiliated with Chadbourne until September 2000, and that, while he was affiliated with Chadbourne, he, Friedman, and Lee "represented MapleWood [Partners] in connection with its initial investments in AMC Computer" (Kislin

---

(1) that, by demonstrating Kislin's substantial involvement in the drafting of the Articles of Association and the Subscription Agreement, and in the negotiation of the Subscription Agreement with Casita, the Offshore Fund has made a sufficient showing of a risk that Kislin acquired client confidences which would be relevant to this action; and (2) that Casita has failed to prove that Kislin had no opportunity to acquire confidential information, while he was employed by Chadbourne, which would be relevant to this action.

14

Affirm., ¶¶ 2, 4). Kislin states in his affirmation that, "[t]o the best of my knowledge, neither I nor anyone at [GDC] obtained any information, confidential or otherwise, about defendant (or any other matters) from [GDC's] or Chadbourne's representations of MapleWood [Partners] and/or [Casita] that would be relevant to the instant action" (*id.*, ¶ 10). However, that merely conclusory averment fails, as a matter of law, to rebut the presumption that Kislin's disqualification should be imputed to GDC (*Kassis v Teacher's Ins. and Annuity Assn.*, 93 NY2d at 619).[7]

As another ground for avoiding disqualification, GDC has represented to the court that "[w]e have erected an ethical screen at [GDC] so [that] Mr. Kislin and Mr. Friedman are completely screened off from all of these matters" (Transcript, at 48). However, the erection of an "ethical screen" or "Chinese Wall" around a disqualified attorney is a sufficient basis for avoiding firm disqualification only where the presumption of imputed law firm disqualification has been rebutted (*see Kassis v Teacher's Ins. and Annuity Assn.*, 93 NY2d at 617; *Nimkoff v Nimkoff*, 18 AD3d at 346). Where, as here, that presumption has not been rebutted, the erection of an "ethical screen" or "Chinese Wall" is "inconsequential" and, as a matter of law, insufficient to avoid firm disqualification (*Kassis v Teacher's Ins. and Annuity Assn.*, 93 NY2d at 619).

For the foregoing reasons, it is hereby

ORDERED that defendant's motion is granted, to the extent that Dennis Friedman, Esq., Scott Kislin, Esq., and the law firm of Gibson, Dunn & Crutcher LLP (GDC) are

---

[7]

In opposition to the Offshore Fund's motion, Casita has also submitted a declaration by Dennis Friedman, in which he makes the substantially similar assertion that, "[t]o the best of my knowledge, neither I nor anyone at [GDC] obtained any information, confidential or otherwise, about defendants (or any other matters) from [GDC's] or Chadbourne's representations of MapleWood [Partners], plaintiff and or Casita that would be relevant to *the instant action*" (Friedman Decl., ¶ 6 [emphasis added]). However, Friedman's assertion has no relevance to this action, because his declaration bears the caption of, and was clearly prepared for submission in, a different action which concerns a different subject matter, and which is being litigated by different parties, than this action.

disqualified from representing plaintiff in this action; and it is further

ORDERED that GDC is directed to serve a copy of this decision and order with notice of entry upon plaintiff, within five days after GDC's receipt of a copy of this decision and order with notice of entry; and it is further

ORDERED that no further proceedings shall be taken in this action against plaintiff, without leave of court, until the expiration of 30 days after service upon plaintiff of a copy of this decision and order, with notice of entry, which shall constitute notice to appoint another attorney pursuant to CPLR 321 (c).

Dated:  2/21/06

ENTER:

_____
J.S.C.

**BERNARD J. FRIED**
**J.S.C.**

FILED

FEB 2 2 2006

NEW YORK
COUNTY CLERK'S OFFICE

16