# EXHIBIT L

Friedman, J.P., Marlow, Sullivan, Nardelli, Gonzalez, JJ.

9462-
9462A    Eugenia VI Venture Holdings, Ltd.,    Index 603193/05
        Plaintiff-Respondent-Appellant,

        -against-

    AMC Investors, LLC, et al.,
        Defendants-Appellants-Respondents.

---

Stevens & Lee, P.C., New York (Chester B. Salomon of counsel), for appellants-respondents.

Gibson, Dunn & Crutcher LLP, New York (Mitchell A. Karlan of counsel), for respondent-appellant.

---

    Judgment, Supreme Court, New York County (Helen E. Freedman, J.), entered March 23, 2006, awarding plaintiff the principal sum of $7,854,267, plus $402,508 in professional fees and expenses and $590 in costs and disbursements, for a sum total of $8,257,365, unanimously reversed, on the law and the facts, without costs or disbursements, the judgment vacated, plaintiff's motion for summary judgment in lieu of complaint granted only as to liability, and the matter remanded for a trial on damages, including fees and costs. Appeal from order, same court and Justice, entered March 13, 2006, denying reargument, unanimously dismissed, without costs, as nonappealable.

    On January 30, 2003, plaintiff, a British Virgin Islands Company, entered into an amended and restated credit agreement to lend AMC Computer Corp. (AMC) up to $16 million by means of revolving and term credit facilities. By agreement entered into

15

that same date, defendants AMC Investors, LLC and AMC Investors II, LLC unconditionally guaranteed both payment and performance of AMC's obligations under the credit agreement. AMC's obligations included "all principal, interest . . . Fees, Charges, expenses, attorneys' fees and any other sum chargeable to [AMC and/or defendants] under the Agreement or any of the other Loan Documents." In addition, AMC's obligations -- and thus, defendants' obligations -- under the guaranty included the fees, costs and disbursements of plaintiff and its counsel or other advisors incurred in connection with any dispute or litigation.

By letter dated May 6, 2005, after AMC representatives had informed plaintiff that AMC had submitted false borrowing base certificates, in violation of the terms of the credit agreement, plaintiff notified AMC that its false submissions and failure to submit audited financial statements covering fiscal years 2003 and 2004, also a violation of the credit agreement's terms, constituted events of default under the agreement. Plaintiff "suspend[ed]" further advances under the revolving facility. By letter of June 3, 2005, plaintiff accelerated and demanded immediate payment of all outstanding obligations from AMC under the credit agreement. By letter of same date, plaintiff notified defendants of AMC's default and demanded payment under the guaranty.

On September 8, 2005, plaintiff moved for summary judgment in lieu of complaint (CPLR 3213) under the guaranty for the outstanding obligations under the credit agreement for at least $8,906,775, including at least $650,000 in attorneys' fees due as of that date for prosecuting this action. In support of the motion, plaintiff submitted the affidavit of Stephen Bell, an accountant and director at KPMG LLP in the forensic services practice, in which he set forth the steps taken to determine the outstanding amounts of principal and interest due. Bell stated that the total balance due as of September 1, 2005 was $7,854,267. As of September 7, 2005, KPMG had invoiced plaintiff $402,508 for professional fees and expenses through August 15. Defendants offered no substantive defense to the motion, arguing instead that service was defective and that they were not given 30 days to respond as provided by the amended credit agreement, and requesting an adjournment to enable them to respond. In reply, plaintiff agreed to extend defendants' time to respond to the motion to October 19, 2005.

In a further submission, defendants conceded liability on the guaranty but disputed the amount due and claimed entitlement to discovery to determine the "exact judgment amount." In a further affirmation, plaintiff's counsel, noting the concession as to liability, requested the court to "schedule a brief inquest to determine the amount of damages." Supreme Court granted the

motion for summary judgment in lieu of complaint in the sum of $7,854,267, finding that defendants, having conceded liability and not having submitted any evidence to rebut the accountant's calculations, failed to raise an issue of fact. The court, however, never addressed plaintiff's request for $650,000 in attorneys' fees. We reverse.

Defendants argue, and the record confirms, that there was no exchange of information between them, as guarantors, and plaintiff, as the lender, to permit an efficacious challenge to the latter's damage and expense claims. In fact, there is no evidence that defendants were privy to the lending information at any time. Bell, the accountant retained by plaintiff to determine the outstanding amounts of principal and interest it was due, failed to attach the "lockbox activity report" on which he relied, his analysis of the collections activity as of September 1, 2005, or work papers or any other supporting documents to show how he arrived at his figures. In addition, he failed to submit billing statements to substantiate KPMG's claim to have invoiced plaintiff $402,508 for professional fees and expenses incurred through August 15, 2005. In light of the foregoing circumstances, a clear issue of fact is presented as to the quantum of damages due under the guaranty, as to which plaintiff bears the burden of proof (see *J.R. Loftus, Inc. v White*, 85 NY2d 874, 877 [1995]).

Accordingly, we remand for a trial on damages and the opportunity, if warranted, for discovery by defendants. The award of damages should also include attorneys' fees and costs to which plaintiff was entitled for the prosecution of its rights pursuant to the credit agreement (see *Sempra Energy Trading Corp. v PG&E Tex. VGM*, 284 AD2d 253 [2001]).

THIS CONSTITUTES THE DECISION AND ORDER<br>
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED:   DECEMBER 5, 2006

*Catherine O'Hogan Wolfe*
———————————————
CLERK

# EXHIBIT M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------

EUGENIA VI VENTURE HOLDINGS, LTD.,
    Plaintiff,
     05 CV 7262 (DAB) (DFE)
 - against -
ROBERT V. GLASER, BURTON C.
GLOSSON, GLEN DELL, RON AUGUSTIN,
    Defendants


-----------------------------------------------

EUGENIA VI VENTURE HOLDINGS, LTD.,
    Plaintiff,
     05 CV 5277 (DAB) (DFE)
 - against -
SURINDER CHABRA, NARINDER CHABRA
AND PARVINDER CHABRA,
    Defendants

-----------------------------------------------

EUGENIA VI VENTURE HOLDINGS, LTD.,
    Plaintiff,
     05 CV 5330 (DAB) (DFE)
 - against -
SURINDER CHABRA, NARINDER CHABRA,

    Defendants

- and -

AMC COMPUTER CORP.,

   Nominal Defendant.

-----------------------------------------------

CONTINUED DEPOSITION OF EKKEHART HASSELS-WEILER

   10:00 a.m.
   February 23, 2006

69

EKKEHART HASSELS-WEILER

1
2   Q   Do you know what a limited
3   partnership interest is?
4   A   I do.
5   Q   So my question is who owns the
6   limited partnership interest in an entity
7   called Casita L.P.?
8   A   Again, I don't understand the
9   question.
10  Q   What do you not understand?
11  A   I don't understand what you mean
12  with the limited partnership interest.
13  Q   Who owns any limited partnership
14  interest in Casita L.P.?
15  A   There are several.
16  Q   Who are they?
17  A   Mr. Hector.
18  Q   Anyone else?
19  A   I do.
20  Q   Anyone else?
21  A   Not to my knowledge.
22  Q   What percentage of the limited
23  partnership interest in Casita does Mr. Hector
24  own?
25  A   I don't know the exact

70

1          EKKEHART HASSELS-WEILER
2   percentage, but it is probably 99 percent.
3          MR. KARLAN: May we take just two
4      minutes?
5          MR. MILLER: Sure. Off the
6      record.
7          (Discussion off the record.
8      Q   Earlier you testified that you
9   have discussed AMC Computer with Mr. Hector
10  after May 2005, correct?
11         MR. KARLAN: Objection to the
12     form of the question. You may answer
13     it.
14     A   Yes.
15     Q   What have you discussed with
16  Mr. Hector concerning AMC Computer since May
17  2005?
18     A   In my recollection I discussed
19  two things. One, that AMC committed fraud,
20  most likely in conjunction with drawdowns of
21  the line of credit.
22         And two, that Maplewood was most
23  likely deeply involved in this fraud, including
24  Mr. Reale and Mr. Glaser personally.
25     Q   What did Mr. Hector say to you?

457

1                EKKEHART HASSELS-WEILER

2      a break.

3           (At this point in the proceedings

4      there was a recess, after which the

5      deposition continued as follows:)

6      Q    Can you tell us what the

7 percentage ownership of the three beneficiaries

8 of the Eugenia trust is?

9      A    Yes.

10     Q    What are they?

11     A    The majority is owned by the

12 charitable foundation.

13     Q    What percentage?

14     A    More than 50 percent.

15     Q    And less than?

16          MR. KARLAN: Do you know the

17     number?

18          THE WITNESS: I do know the

19     number.

20     A    It's 51 percent.

21     Q    And the other two beneficiaries?

22     A    Mr. & Mrs. Hector are 49

23  percent.

24       Q    Did you hire David Alexander and
25  Tim Rogers for Eagle Advisors?