UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------- | x | |
| EUGENIA VI VENTURE HOLDINGS, LTD.,<br><br>              Plaintiff,<br><br>     - v –<br><br>MAPLEWOOD EQUITY PARTNERS, LP,<br><br>              Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | 07-CIV-9417<br>(Batts, J.)<br>(Eaton, M.J.) |
| ------------------------------------------------- | x | |

**DEFENDANT'S MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, New York 10022-5803
Telephone: (212) 319-8500
Facsimile: (212) 319-8505

*Counsel for Defendant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

MEMORANDUM OF LAW ..........................................................................................1

I.     BACKGROUND ...................................................................................................1

II.    ARGUMENT .........................................................................................................7

       A.     The Court Lacks Subject-Matter Jurisdiction ..........................................8

       B.     Eugenia Has Not Adequately Pleaded a Cause of Action for "Alter Ego/Misuse of Corporate Form." ...........................................................10

       C.     Eugenia Has Not Adequately Pleaded Fraud ..........................................14

               1.     Eugenia Has Not Pleaded Fraud in Accordance With Rule 9(b)...............15

               2.     Eugenia Has Not Pleaded the Elements of Fraud ......................................16

III.    CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Acito v. IMCERA Group, Inc.,*
    47 F.3d 47 (2d Cir. 1995) ..............................................................................15

*Aurecchione v. Schoolman Transp. Sys., Inc.,*
    426 F.3d 635 (2d Cir. 2005)..............................................................................7

*Bank of India v. Subramanian,*
    No. 06 Civ. 2026 (WHP), 2007 WL 1424668 (S.D.N.Y. May 15, 2007) ..........8

*Bell Atlantic Corp. v. Twombly,*
    127 S.Ct. 1955 (2007)......................................................................................8

*Butala v. Agashiwala,*
    916 F. Supp. 314 (S.D.N.Y. 1996).................................................................16

*C. T. Carden v. Arkoma Assoc.,*
    494 U.S. 185 (1990)........................................................................................9

*Camofi Master LDC v. Coll. P'ship, Inc.,*
    452 F. Supp. 2d 462 (S.D.N.Y. 2006).............................................................8

*Carte Blanche (Singapore) PTE, Ltd. v. Diners Club Internat'l, Inc.,*
    758 F. Supp. 908 (S.D.N.Y. 1991).................................................................17

*Cascade Energy & Metals Corp. v. Banks,*
    896 F.2d 1557 (10th Cir. 1990) .....................................................................17

*Casita, L.P. v. Maplewood Equity Partners (Offshore) Ltd.,*
    11 Misc.3d 1054(A), 2006 WL 399796 (N.Y. Sup. Feb. 22, 2006) ...................5

*Creaciones con Idea, S.A. v. Mashreqbank PSC,*
    232 F.3d 79 (2d Cir. 2000).........................................................................8, 10

*Creaciones con Idea, S.A. v. Mashreqbank PSC,*
    75 F. Supp. 2d 279 (S.D.N.Y. 1999)...............................................................9

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,*
    375 F.3d 168 (2d Cir. 2004)..........................................................................16

*Eugenia VI Venture Holdings, Ltd. v. AMC Investors, LLC et al.,*
    Index No. 603193/05 (N.Y. Sup. Ct.) .............................................................2

*Eugenia VI Venture Holdings, Ltd. v. MapleWood Equity Partners, L.P.,*
  Index No. 600021/06 (N.Y. Sup. Ct.) .................................................................8

*Eugenia VI Venture Holdings, Ltd. v. Robert V. Glaser et al.,*
  Case No. 05-CV-7262................................................................................6

*Filetech S.A. v. France Telecom S.A.,*
  157 F.3d 922 (2d Cir. 1998)........................................................................7

*Fletcher v. Atex, Inc.,*
  68 F.3d 1451 (2d Cir. 1995).............................................................10, 11, 13

*Gartner v. Snyder,*
  607 F.2d 582 (2d Cir. 1979).........................................................................13

*Gillen v. 397 Properties LLC,*
  No. Civ.A 18822, 2002 WL 259953 (Del. Ch. Feb. 19, 2002)........................................11

*Granite Partners, L.P. v. Bear, Stearns & Co.,*
  17 F. Supp. 2d 275 (S.D.N.Y. 1998)................................................................16

*Gross v. Empire Healthchoice Ass., Inc.,*
  12 Misc.3d 1155(A) (N.Y. Sup. Ct. 2006) ..........................................................7

*Handelsman v. Bedford Village Assocs. LP,*
  213 F.3d 48 (2d Cir. 2000)......................................................................8, 10

*Heitz v. Salant Corp.,*
  No. 95 Civ. 3866 (DC), 1997 WL 13241 (S.D.N.Y. Jan. 13, 1997)...................................11

*Herrick Co. v. SCS Communs., Inc.,*
  251 F.3d 315 (2d Cir. 2001).........................................................................9

*In re Foxmeyer Corp.,*
  290 B.R. 229 (Bankr. D. Del. 2003) ...............................................................11

*In re RSL Com Primecall, Inc.,*
  No. 03-2176 (ALG), 2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003) ........................10, 12

*In re Ticketplanet.com,*
  313 B.R. 46 (Bankr. S.D.N.Y. 2004)................................................................14

*Israel Aircraft Industries Ltd. v. Sanwa Business Credit Corp.,*
  16 F.3d 198 (7th Cir. 1994) ......................................................................10

*Jarvis v. Cardillo*,
No. 98 Civ 5793 (RWS), 1999 WL 187205 (S.D.N.Y. Apr. 5, 1999)..............................7

*Kalb, Voorhis & Co. v. American Fin. Corp.*,
8 F.3d 130 (2d Cir. 1993) ...............................................................................10

*Kolbeck v. LIT Am., Inc.*,
923 F. Supp. 557 (S.D.N.Y. 1996).....................................................................16

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413, 646 N.Y.S.2d 76 (N.Y. 1996) ..................................................16

*LaSalle Nat'l Bank v. Perelman*,
141 F. Supp. 2d 451 (D. Del. 2001)....................................................................15

*Lesavoy v. Lane*,
304 F. Supp. 2d 520 (S.D.N.Y. 2004), *aff'd*, 2006 WL 508344 (2d Cir. 2006)...............15

*Mills v. Everest Reins. Co.*,
410 F. Supp. 2d 243 (S.D.N.Y. 2006).................................................................16

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)..............................................................................15

*Mudge Rose Guthrie Alexander & Ferdon v. Pickett*,
11 F. Supp. 2d 449 (S.D.N.Y. 1998)....................................................................9

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd.*,
85 F. Supp. 2d 282 (S.D.N.Y. 2000)...................................................................15

*Outokumpu Eng'g Enter., Inc. v. Kvaerner Enviropower, Inc.*,
685 A.2d 724 (Del. 1996) ................................................................................11

*Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*,
255 F. Supp. 2d 134 (W.D.N.Y. 2003)...............................................................12

*Pits, Ltd. v. American Express Bank Int'l*,
911 F. Supp. 710 (S.D.N.Y. 1996).....................................................................16

*RNB Garments Philippines, Inc. v. Lau*,
No. 98 CIV 4562 (DLC), 1999 WL 223153 (S.D.N.Y. Apr. 16, 1999) ...........................14

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004).........................................................................14, 15

*Sweeney, Cohn, Stahl & Vaccaro v. Kane,*
　　6 A.D.3d 72, 773 N.Y.S.2d 420 (2d Dep't 2004) ............................................................10

*UCAR Int'l, Inc. v. Union Carbide Corp.,*
　　No. 00CV1338 (GBD), 2004 WL 137073 (S.D.N.Y. Jan. 26, 2004) ................................7

*Universal Licensing Corp. v. Paola del Lungo S.P.A.,*
　　293 F.3d 579 (2d Cir. 2002) ..........................................................................................10

*Wallace v. Wood,*
　　752 A.2d 1175 (Del. Ch. 1999) .........................................................................10, 11, 14

*William Wrigley Jr. Co. v. Waters,*
　　890 F.2d 594 (2d Cir. 1989) ............................................................................................13

*Williams v. McAllister Bros., Inc.,*
　　534 F.2d 19 (2d Cir. 1976) ..............................................................................................13

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,*
　　215 F.3d 247 (2d Cir. 2000) ..............................................................................................7

**Statutes and Rules**

28 U.S.C. § 1332 .....................................................................................................................8

Federal Rule of Civil Procedure 12(b) .........................................................................1, 8, 10

Federal Rule of Civil Procedure 9(b) ................................................................... passim

**Other Authorities**

15 MOORE'S FED. PRAC. § 102.57[1] ......................................................................................9

Defendant Maplewood Equity Partners, L.P. ("MapleWood Equity"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b), hereby moves this Court for entry of an order dismissing the Complaint filed by Plaintiff, Eugenia VI Venture Holdings, Ltd. ("Eugenia"), with prejudice, and states as follows:

### MEMORANDUM OF LAW

This lawsuit is a desperate attempt to circumvent MapleWood Equity's corporate form and hold it responsible for the obligations of two wholly separate entities that Eugenia's own attorneys created. Even though MapleWood Equity was not a party to the agreements that Eugenia seeks to enforce, Eugenia insists that the law and a host of inconvenient facts should be pushed aside in favor of its odd notion of equity.

Insurmountable problems plague Eugenia's two-claim Complaint and require dismissal of this lawsuit in its entirety. First and foremost, the Court lacks jurisdiction to consider this action because aliens are present on both sides of the litigation and, therefore, complete diversity does not exist. The Complaint should also be dismissed because Eugenia's vague and conclusory "alter ego" allegations do not state a claim upon which relief may be granted. Finally, dismissal is required now, on the pleadings, because Eugenia has not come close to alleging its thinly veiled fraud claim with the specificity required by Civil Rule 9(b).

### I. BACKGROUND

Eugenia's claims are dressed up in notions of fairness and equity, but they really stem from Eugenia's displeasure over the contract it negotiated (and apparently what it now wishes it had negotiated) with respect to AMC Computer, Corp. ("AMC Computer"). AMC Computer is a non-party company to which Eugenia loaned money more than four years ago. MapleWood Equity is part of a Miami-based private equity fund complex, and AMC Computer was one of

the fund's portfolio companies. AMC Computer has been defunct since 2005, and its assets have been liquidated in a state-court assignment for the benefit of creditors.

Pursuant to an Amended and Restated Credit Agreement dated January 30, 2003 ("the Credit Agreement"), Eugenia extended loans to AMC Computer for working capital, Cmplt. ¶ 22, but only after it had demanded and obtained certain changes to the capital structure of AMC Computer. As part of making the loans, Eugenia set as a condition precedent that two of AMC Computer's shareholders, AMC Investors LLC ("AMC Investors I") and AMC Investors II LLC ("AMC Investors II") (together, "the AMC Investor Entities"), execute an unconditional guaranty ("the Guaranty") in favor of Eugenia, guaranteeing payment of AMC Computer's obligations to Eugenia under the Credit Agreement. *Id.* ¶ 23.

The AMC Investor Entities are special purpose investment vehicles created solely to invest in AMC Computer and to own stock in AMC Computer. *See* Affidavit of Chester B. Salomon, Esq. in Support of Motion to Disqualify, filed concurrently herewith (hereinafter "Salomon Aff."), ¶¶ 3-4 (attaching copy of Credit Agreement and Guaranty as Exhibits A and B, respectively). MapleWood Equity was <u>not</u> a party to the Credit Agreement, the Guaranty, or any other agreement relating to Eugenia's loans to AMC Computer.

Now, four years after extending the loans to AMC Computer, and almost two-and-a-half years after AMC Computer became defunct, Eugenia seeks to hold one (and only one) of the AMC Investor Entities' five shareholders, MapleWood Equity, responsible for all of the obligations of the AMC Investor Entities "under the Guaranty and/or Credit Agreement." Cmplt. ¶ 39. Those "obligations" presumably include a $10.7 million New York state court judgment rendered against the AMC Investor Entities earlier this year on the basis of the Guaranty.[1]

---

[1]    The AMC Investors did not contest liability in the New York state court action, only the amount of the judgment against them.

*Eugenia VI Venture Holdings, Ltd. v. AMC Investors, LLC et al.*, Index No. 603193/05 (N.Y. Sup. Ct.); *see* Cmplt. ¶¶ 3-4.

Notably absent from this action are any claims against MapleWood Equity's parallel fund, MapleWood Equity Partners (Offshore) Ltd. ("MapleWood Offshore"), even though it owns almost 25% of AMC Investors I, and 30% of AMC Investors II.  *See* Affidavit of Robert V. Glaser in Support of Defendant's Motion to Dismiss, filed concurrently herewith (hereinafter "Glaser MTD Aff.") ¶ 2, Exhs. A & B.  Eugenia has not sued MapleWood Offshore here for the simple reason that Eugenia's affiliate, Casita, L.P., is by far the largest investor in MapleWood Offshore, *see id.* ¶ 3, and a judgment against MapleWood Offshore would jeopardize Casita's holdings.  For the same self-interested reason, Eugenia has chosen not to sue Casita – even though Casita (like MapleWood Equity) is a co-investor in AMC Investors I.  *See id.* ¶ 4.

Instead, Eugenia has chosen just one of the AMC Investor Entities' five shareholders, MapleWood Equity, as the target of its "alter ego" theory of relief.   Eugenia would have the Court believe that it recently discovered – no doubt by sheer pluck and tenacity – that the AMC Investor Entities are "shell companies" with no appreciable assets, and that MapleWood Equity is actually responsible for all of their obligations.  *See, e.g.,* Cmplt. ¶¶ 6-10.  Eugenia's narrative is misleading in the extreme.

The Complaint conspicuously fails to mention that, pursuant to the Credit Agreement and the Guaranty underlying the obligations Eugenia is attempting to enforce against MapleWood Equity, Eugenia and its counsel in this lawsuit, Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), required the AMC Investor Entities to maintain no assets other than their holdings in AMC Computer.  Through section 3.8 of the Credit Agreement, Eugenia required the AMC Investor Entities to represent that:

> None of the [AMC Investor Entities] has any assets (except Stock of their
> Subsidiaries) or any Indebtedness or Guaranteed Indebtedness (except the
> [guaranties under the Credit Agreement]).

*See* Salomon Aff., Exh. A, § 3.8.  Further, the Credit Agreement prohibited the AMC Investor

Entities from, among other things, "form[ing] or acquir[ing] any Subsidiary," "acquir[ing] all or

substantially all of the assets or Stock of … any Person without [Eugenia's] prior written

consent," or making any new investments or loans.  *Id.* §§ 6.1-6.2.  Similarly, in section 6.20,

Eugenia required the AMC Investor Entities to affirmatively covenant that:

> None of the [AMC Investor Entities] shall engage in any trade or business, or own
> any assets (other than Stock of their Subsidiaries) or incur any Indebtedness or
> Guaranteed Indebtedness (other than the [guaranties under the Credit
> Agreement]).

*Id.* § 6.20.[2]

In fact, the Credit Agreement proves that Eugenia was not only well acquainted with the

capital structure and capitalization of the AMC Investor Entities **before** it extended the loans to

AMC Computer and accepted the Guaranty in early 2003, but had also determined "in its sole

discretion" that their capital structure was "acceptable":

> 2.1    Conditions to the Initial Loans.  [Eugenia] shall not be obligated to
> make any Loan on the Closing Date, or to take, fulfill, or perform any other action
> hereunder, until the following conditions have been satisfied or provided for in a
> manner satisfactory to [Eugenia], or waived in writing by [Eugenia]:
>
> (f)    Capital Structure; Other Indebtedness.  **The capital
> structure of each Credit Party [i.e., the AMC Investor Entities] shall be
> acceptable to [Eugenia] in its sole discretion** and no Credit Party shall have any
> Indebtedness outstanding other than Indebtedness hereunder and Indebtedness set
> forth on Schedule 6.3.

---

[2]    As noted in the Complaint (¶ 32), the AMC Investor Entities did have a small amount of accrued interest in
a Citibank account, which had sat idle since 2000.  During the course of producing its books and records to Eugenia
in the state-court proceeding, AMC Investors I discovered that Citibank had transferred the money (roughly
$25,000) to the State of Florida as abandoned property.  AMC Investors I promptly alerted Eugenia to the existence
of the money.

        (g)    <u>Due Diligence</u>.   **[Eugenia] shall have completed its business and legal due diligence, including a roll forward of its previous Collateral audit, with result satisfactory to [Eugenia].**

Salomon Aff., Exh. A, ¶ 2.1(f)-(g) (emphasis added).  The Complaint omits these provisions.  It also neglects to mention that one of Eugenia's affiliates, Casita, L.P., is a co-investor in AMC Investors I, having invested $2.5 million into the company.  *See* Glaser MTD Aff. ¶ 4.

What makes the Complaint especially misleading is the fact that Eugenia's counsel has <u>always known</u> that the AMC Investor Entities were special purpose investment vehicles – what the Complaint calls "shell companies" – because Gibson Dunn attorneys actually recommended and <u>created</u> the AMC Investor Entities in the first instance.[3]  *See* Affidavit of Robert V. Glaser in Support of Motion to Disqualify, filed currently herewith (hereinafter "Glaser DQ Aff.") ¶¶ 10-13.  Eugenia's counsel has always known, for example, that the only assets AMC Investors I ever owned were the cash it invested in AMC Computer, together with accrued interest, and shares of Common Stock in AMC Computer.  *Id*. ¶ 10.  <u>Eugenia's counsel drafted the AMC Investor Entities' governing documents, and provided legal advice with regard to their structure and operations</u>.  *Id*. ¶¶ 10 & 13.  And although Eugenia insisted that certain changes be made to the capital structure of AMC Computer before it made the loans, Eugenia did not require changes to the capital structure of the AMC Investor Entities.  Quite the contrary, as explained above, Eugenia insisted that no changes be made to their capital structure as a condition to accepting the Guaranty.

---

[3]      MapleWood Equity has separately moved to disqualify Gibson Dunn from serving as Eugenia's counsel in this lawsuit, on the ground that attorneys for Gibson Dunn created the corporate structure of MapleWood Equity and the AMC Investor Entities.  The AMC Investor Entities were created by attorneys at Chadbourne & Parke, who then moved *en masse* to Gibson Dunn.  On February 21, 2006, a New York State Supreme Court issued a lengthy decision disqualifying Gibson Dunn from further representing a Eugenia affiliate, Casita L.P., in an action against another entity created by Gibson Dunn attorneys, MapleWood Equity Partners (Offshore) Ltd.  *See Casita, L.P. v. Maplewood Equity Partners (Offshore) Ltd.*, 11 Misc.3d 1054(A), 2006 WL 399796 (N.Y. Sup. Feb. 22, 2006).  The decision to disqualify Gibson Dunn was affirmed unanimously on appeal.

Ignoring these indisputable facts, Eugenia seeks to make MapleWood Equity responsible for the obligations of the AMC Investor Entities, because MapleWood Equity is allegedly their "alter ego." Cmplt. ¶¶ 33-42. Eugenia claims that the relief it seeks is equitable, but there is nothing fair about singling out MapleWood Equity among the AMC Investor Entities' shareholders. There is nothing equitable about forcing MapleWood Equity to assume undivided responsibility for the obligations of the AMC Investor Entities, two wholly separate companies that Eugenia's counsel created, with which Eugenia and its affiliates were intimately acquainted before Eugenia made the loans and accepted the Guaranty, and on whose behalf Eugenia could have (but did not) require a collateral guaranty.

Eugenia is, and always has been, a highly sophisticated investor represented by competent counsel. Eugenia entered the Credit Agreement with full knowledge of the capitalization, structure, and limited purposes of the AMC Investor Entities. Eugenia knew they were special purpose investment vehicles with no appreciable assets other than their stock in AMC Computer, and it insisted they remain that way. Eugenia could have obtained a guaranty from someone other than the AMC Investor Entities – for example, from MapleWood Equity or MapleWood Offshore – but it chose not to do so. Instead, it chose to accept the Guaranty, all the while precluding the AMC Investor Entities from acquiring new or additional assets. Eugenia does not allege otherwise.[4] In short, the basic premise of this lawsuit – that Eugenia was

---

[4]    Eugenia makes a handful of false allegations regarding a "fraud" allegedly perpetrated by MapleWood Equity and Robert Glaser with respect to certain operations of AMC Computer. *See* Cmplt. ¶¶ 21-22. Those allegations are entirely unfounded. Furthermore (while admittedly beyond the four corners of the Complaint) it bears mention that the individual who negotiated the Credit Agreement on Eugenia's behalf, Ekkehart Hassels-Weiler, testified in a prior proceeding that he communicated to Mr. Glaser that AMC Computer had "precarious finances" back in January 2003. Deposition of Ekkehart Hassels-Weiler, *Eugenia VI Venture Holdings, Ltd. v. Glaser, et al.*, Case No. 05-CV-7262 (S.D.N.Y.), Feb. 22, 2006 at 162:17 to 164:13. Moreover, Eugenia's unfounded allegations of fraud are already the focal point of an entirely different lawsuit pending in the Southern District of New York, *Eugenia VI Venture Holdings, Ltd. v. Robert V. Glaser et al.*, Case No. 05-CV-7262. The district court in that case is considering defendants' motion for summary judgment, which has been fully briefed.

somehow misled into entering the Credit Agreement and accepting the Guaranty – is terribly disingenuous and demonstrably false.

In any event, Eugenia has not adequately pleaded either of its causes of action against MapleWood Equity. The Complaint attempts to assert two claims: (1) "Alter Ego/Misuse of Corporate Form," Cmplt. ¶¶ 33-39; and (2) "Declaratory Judgment," *id.* ¶¶ 40-42. The second claim seeks a declaration that MapleWood Equity "is liable for the AMC Investors obligations, including their obligations to [Eugenia] under the Guaranty." *Id.* ¶ 42. Since the declaratory judgment claim merely restates the allegations in Eugenia's first claim, it rises or falls with the first claim. *See UCAR Int'l, Inc. v. Union Carbide Corp.*, No. 00CV1338 (GBD), 2004 WL 137073, *18 (S.D.N.Y. Jan. 26, 2004); *Gross v. Empire Healthchoice Ass., Inc.*, 12 Misc.3d 1155(A), *10 (N.Y. Sup. Ct. 2006).

As a matter of law, neither of Eugenia's claims is actionable.

### III. ARGUMENT

In considering a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), federal courts "need not accept as true contested jurisdictional allegations." *Jarvis v. Cardillo*, No. 98 Civ. 5793 (RWS), 1999 WL 187205, *2 (S.D.N.Y. Apr. 5, 1999). As the party seeking to invoke jurisdiction, the plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject-matter jurisdiction exists. *See Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). The Court may resolve any disputed jurisdictional facts by referring to evidence outside of the pleadings. *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998).

---

The allegations of fraud there have no bearing on Eugenia's claims in this lawsuit, which seek to hold MapleWood Equity responsible for the obligations of the AMC Investor Entities under a veil piercing theory.

A motion to dismiss pursuant to Rule 12(b)(6) should be granted if the allegations in the complaint, even if proven, would not entitle the plaintiff to relief. *See Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007). The plaintiff's obligation to set forth the grounds of its entitlement to relief "requires more than labels and conclusions." *Id.* Further, to the extent the claims sound in fraud, the plaintiff must satisfy the heightened pleading standard set forth in Rule 9(b), and "state[] with particularity" the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *see Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 482 (S.D.N.Y. 2006).

As explained below, the Court should dismiss this action with prejudice because it lacks jurisdiction to consider it, and because Eugenia cannot adequately plead its claims for relief.

## A.    The Court Lacks Subject-Matter Jurisdiction.

Eugenia is attempting to hail MapleWood Equity into federal court based on diversity jurisdiction.[5] *See* Cmplt. ¶ 14; 28 U.S.C. § 1332(a)(2). But diversity requires that "all of the adverse parties in a suit … be completely diverse with regard to citizenship." *Handelsman v. Bedford Village Assocs. LP*, 213 F.3d 48, 51 (2d Cir. 2000) (internal marks omitted). <u>Diversity jurisdiction is therefore absent "when aliens are present on both sides of the litigation."</u> *Bank of India v. Subramanian*, No. 06 Civ. 2026 (WHP), 2007 WL 1424668, *2 (S.D.N.Y. May 15, 2007); *see Creaciones Con Idea, S.A. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000).

The Court lacks jurisdiction to consider this lawsuit because there are aliens on both sides of the litigation. By its own admission, Eugenia is an "alien" for purposes of diversity jurisdiction. Eugenia alleges that it is "a company organized under the laws of the British Virgin

---

[5]    By attempting to bring this lawsuit in federal court, Eugenia is engaging in forum shopping. Last year, Eugenia attempted to raise the same "alter ego" claims against MapleWood Equity in New York <u>state</u> court, *Eugenia VI Venture Holdings, Ltd. v. MapleWood Equity Partners, L.P.*, Index No. 600021/06 (N.Y. Sup. Ct.), but the court dismissed Eugenia's claims and imposed as a sanction dismissal with prejudice (later modified to be without prejudice by the Appellate Division). Rather than return to the state court that sanctioned Eugenia the first time it asserted these claims, Eugenia has decided to forum shop in federal court.

Islands, with its principal place of business in the Cayman Islands." Cmplt. ¶ 12; *id*. ¶ 14 ("This is an action between an alien ...."); *see* 28 U.S.C. § 1332(c); *Creaciones Con Idea, S.A. v. Mashreqbank PSC*, 75 F. Supp. 2d 279, 281 (S.D.N.Y. 1999).

Eugenia claims that diversity exists because MapleWood Equity is "a citizen of the United States." Cmplt. ¶ 14. For jurisdictional purposes, though, that is simply not true. As its name reveals, MapleWood Equity Partners, L.P. is a limited partnership. Among the numerous member partners of MapleWood Equity are at least two foreign citizens: CIBC Capital Corporation (Canada) and Rippon Limited (Argentina). *See* Glaser MTD Aff. ¶ 5.

While a corporation is deemed a citizen of its State of incorporation and principal place of business, 28 U.S.C. § 1332(c)(1), a partnership – like MapleWood Equity – "has the citizenship of each of its partners." *Herrick Co. v. SCS Communs., Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (emphasis added); *see C. T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96 (1990) ("We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members, the several persons composing such association, [and] each of its members.") (internal marks and citations omitted); 15 MOORE'S FED. PRAC. § 102.57[1] ("[A] partnership['s] ... citizenship must be determined with reference to each of its partners"). This is true regardless of the partnership's designation as a general, limited, or limited liability partnership. *See Carden*, 494 U.S. at 192; *Mudge Rose Guthrie Alexander & Ferdon v. Pickett*, 11 F. Supp. 2d 449, 451 (S.D.N.Y. 1998).

Applying these black-letter principles, it is readily apparent that MapleWood Equity is not "a citizen of the United States," but rather an "alien" for purposes of diversity jurisdiction. Because this lawsuit pits an alien plaintiff, Eugenia, against an alien defendant, MapleWood Equity, complete diversity is lacking, and the lawsuit must be dismissed in its entirety pursuant

to Rule 12(b)(1).  *See also Universal Licensing Corp. v. Paola del Lungo S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002) ("[D]iversity is lacking … where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens."); *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000) (diversity lacking where plaintiff was a citizen of Florida and defendant-partnerships had Florida members); *Creaciones*, 232 F.3d at 82 ("Diversity jurisdiction is lacking … because corporations incorporated outside the United States are present on both sides of the dispute."); *Israel Aircraft Industries Ltd. v. Sanwa Business Credit Corp.*, 16 F.3d 198, 202 (7th Cir. 1994) ("the statute creating the diversity jurisdiction does not contemplate an alignment of alien versus citizen plus alien").

###    B.    Eugenia Has Not Adequately Pleaded a Cause of Action for "Alter Ego/Misuse of Corporate Form."

The Complaint recites a handful of reasons why MapleWood Equity is supposedly responsible for the obligations of the AMC Investor Entities under a theory of "Alter Ego/Misuse of Corporate Form."  *See* Cmplt. ¶¶ 33-39.  Courts applying Delaware law, however, will not pierce the corporate veil absent a showing of exceptional circumstances.  *Wallace v. Wood*, 752 A.2d 1175, 1183-84 (Del. Ch. 1999) ("Persuading a Delaware court to disregard the corporate entity is a difficult task.") (internal marks omitted); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995).[6]  The circumstances comprising Eugenia's claims are far from exceptional.

"Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice.  Effectively, the corporation must be a sham and exist

---

[6]    Delaware law applies to Eugenia's alter ego claim because MapleWood Equity and the AMC Investor Entities were organized under the law of Delaware.  *See Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders."); *In re RSL Com Primecall, Inc.*, No. 03-2176 (ALG), 2003 WL 22989669, *15 (Bankr. S.D.N.Y. Dec. 11, 2003); *Sweeney, Cohn, Stahl & Vaccaro v. Kane*, 6 A.D.3d 72, 75, 773 N.Y.S.2d 420, 423 (2d Dep't 2004).

for no other purpose than as a vehicle for fraud." *Wallace v. Wood*, 752 A.2d at 1184 (emphasis added and internal marks omitted) (quoting *Outokumpu Eng'g Enter., Inc. v. Kvaerner Enviropower, Inc.,* 685 A.2d 724, 729 (Del. 1996)). Eugenia must show "(i) that the [various entities] operated as a single economic entity, and (ii) that an overall element of injustice or unfairness is present." *Fletcher*, 68 F.3d at 1457 (internal marks omitted). The required injustice or unfairness is "not simple in nature but rather something that is similar in nature to fraud or a sham." *In re Foxmeyer Corp.*, 290 B.R. 229, 236 (Bankr. D. Del. 2003).

In vague and conclusory fashion, the Complaint asserts that MapleWood Equity "is a holder of controlling membership interest in the AMC Investors" (Cmplt. ¶ 34); that MapleWood Equity "exercised complete domination and control over the AMC Investors" (*id.*); that "[t]he AMC Investors were inadequately capitalized for their intended business purpose and potential liabilities" (*id.* ¶ 37); and that MapleWood Equity "abused the AMC Investors' corporate form with intent to avoid liability[.]" (*id.* ¶ 38). None of these allegations gets Eugenia beyond the pleading stage.

As a threshold matter, conclusory statements like those offered by Eugenia are completely inadequate to justify ignoring the corporate form. *See Fletcher*, 68 F.3d at 1461. To have any hope of succeeding in this action, Eugenia must allege the underlying facts with specificity; its failure to do so warrants dismissal. *See Gillen v. 397 Properties LLC,* No. Civ.A 18822, 2002 WL 259953, *1 (Del. Ch. Feb. 19, 2002) (veil piercing claim inadequate where complaint offered "conclusory allegations"); *Wallace*, 752 A.2d at 1184 (granting motion to dismiss inadequately pleaded alter ego claim); *see also Heitz v. Salant Corp.*, No. 95 Civ. 3866(DC), 1997 WL 13241, *4 (S.D.N.Y. Jan. 15, 1997) ("conclusory statements" about how company "had no separate will of its own" deemed insufficient).

In the few instances where Eugenia attempts to get specific, its allegations still fail as a matter of law. The Complaint primarily focuses on the AMC Investor Entities' capitalization. It alleges that they were "inadequately capitalized" (Cmplt. ¶ 37), had "no funding" (*id.* ¶ 9), "no assets" (*id.* ¶ 10), and "are insolvent, and are [therefore] unable to satisfy their obligations to Eugenia under the Guaranty" (*id.* ¶ 25). These allegations are of no moment, though, because it is beyond dispute that the AMC Investor Entities were adequately capitalized <u>for their intended purpose</u>: to invest in and own stock in AMC Computer. *See* Glaser DQ Aff. ¶ 10; *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 181 (W.D.N.Y. 2003) ("[T]he inadequate capitalization factor pertains only to capitalization 'in light of the purposes for which the corporation was organized.'").

It is likewise true Eugenia had performed due diligence and had satisfied itself "in its sole discretion" that the AMC Investor Entities were sufficiently capitalized <u>before</u> it made the loans and accepted the Guaranty in early 2003. *See* Salomon Aff., Exh. A, ¶ 2.1(f)-(g). Eugenia's contention that MapleWood Equity's corporate veil must be pierced because the AMC Investor Entities are unable to satisfy the Guaranty now, more than four years later, must be rejected. "If lack of adequate capitalization were alone enough to justify piercing the corporate veil, the veil of every insolvent subsidiary or failed start-up corporation could be pierced." *In re RSL Com Primecall, Inc.*, No. 03-2176 (ALG), 2003 WL 22989669, *16 (Bankr. S.D.N.Y. Dec. 11, 2003).

The Complaint also emphasizes MapleWood Equity's interest in and alleged "control" over the AMC Investor Entities. *See* Cmplt. ¶¶ 17-19. But MapleWood Equity owns just a bare majority (56%) of AMC Investors I, and a slightly higher percentage (70%) of AMC Investors II. *Id.* ¶ 17. Thus, even taking Eugenia's allegations as true, MapleWood Equity and the AMC

Investor Entities have not "operated as a single economic entity[.]" *Fletcher*, 68 F.3d at 1457. In fact, four other entities, including Eugenia's affiliate, Casita, L.P., are shareholders in the AMC Investor Entities.  Glaser MTD Aff. ¶ 4, Exhs. A & B, (Schedule setting forth various ownership interests in AMC Investors I).  For example, MapleWood Equity's parallel fund, MapleWood Offshore, owns almost 25% of AMC Investors I, and 30% of AMC Investors II. *Id*. ¶ 2.[7]  And a different entity, MapleWood Management L.P., is "the sole manager of the AMC Investors." Cmplt. ¶ 18.[8]

In any event, even if MapleWood Equity completely dominated the AMC Investor Entities (and it does not), control by itself is not sufficient to pierce the corporate veil.  *See Gartner v. Snyder*, 607 F.2d 582, 587 (2d Cir. 1979) (that individual was controlling principal of the corporation was not by itself sufficient to justify disregarding corporate form); *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 601 n.2 (2d Cir. 1989); *Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 21 (2d Cir. 1976) (ownership by parent of all subsidiary's stock was insufficient to justify piercing corporate veil).

Beyond all of that, Eugenia has not alleged that MapleWood Equity used the AMC Investor Entities' corporate form solely to perpetrate fraud or injustice.  After all, the AMC Investor Entities existed for more than two years before the Guaranty was executed, had provided a guaranty of a prior loan, and were very strongly capitalized prior to the decline in

---

[7]    As noted previously, Eugenia has not sued MapleWood Offshore here, but not for any principled legal reason, but rather because Eugenia's affiliate, Casita, L.P., is the largest single investor in MapleWood Offshore. *See* Glaser MTD Aff. ¶ 3.

[8]    The notion that MapleWood Equity and the AMC Investor Entities operated as a single economic entity is indeed preposterous.  The following additional facts – though not necessarily within the four corners of the the Complaint – further expose Eugenia's alter ego theory as untenable:  (1) the AMC Investor Entities have four other shareholders besides MapleWood Equity, and MapleWood Equity has roughly twenty limited partners – yet just one limited partner of MapleWood Equity is a shareholder in the AMC Investor Entities; (2) unlike the AMC Investor Entities, who invested in a single company (AMC Computer), MapleWood Equity invested in numerous companies; and (3) Eugenia, through its common management with Casita, L.P., knew the foregoing facts before it made the loans to AMC Computer and accepted the Guaranty.

value of their AMC Computer holdings.  Eugenia, not MapleWood Equity, mandated that they have no other assets or business as a condition of accepting the Guaranty.  Furthermore, there was nothing unusual or improper about using the AMC Investor Entities as special purpose investment vehicles or loan guarantors.  Because Eugenia cannot possibly allege that the AMC Investor Entities were "a sham and existed for <u>no other purpose</u> than as a vehicle for fraud,'" *In re Ticketplanet.com*, 313 B.R. 46, 70-71 (Bankr. S.D.N.Y. 2004) (emphasis added) (quoting *Wallace*, 752 A.2d at 1184), its self-styled "Alter Ego/Misuse of Corporate Form" claim and derivative declaratory action claim must be dismissed.

###    C.    Eugenia Has Not Adequately Pleaded Fraud.

While Eugenia carefully avoids using the word "fraud" in an effort to avoid the strictures of Rule 9(b), it is clear on the face of the Complaint that Eugenia's claims are grounded in fraud. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (Rule 9(b) applies to "all averments of fraud," and "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action").  Eugenia alleges, for example, that MapleWood Equity "abused the AMC Investors' corporate forms <u>with the intent to avoid liability</u> to [Eugenia] for AMC's obligations under the Guaranty and this resulted in both injustice and unfairness to Eugenia."  Cmplt. ¶ 38 (emphasis added).  "Alter-ego liability is not a cause of action … but rather is an assertion of facts and circumstances which will persuade the court to impose liability."  *RNB Garments Philippines, Inc. v. Lau*, No. 98 CIV 4561 (DLC), 1999 WL 223153, *3 (S.D.N.Y. Apr. 16, 1999) (internal marks omitted); *see* authorities cited re

alter ego and fraud, *supra*.  Consequently, Eugenia must articulate the facts and circumstances underlying its poorly disguised fraud claim with particularity.[9]

        1.      <u>Eugenia Has Not Pleaded Fraud in Accordance With Rule 9(b).</u>

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  In order to comply with this heightened pleading standard, Eugenia must "(1) specify the statements that [Eugenia] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach*, 355 F.3d at 170 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).[10]  "Furthermore, Rule 9(b) requires that fraud charges contain particularized 'facts that give rise to a strong inference' that defendants acted with fraudulent intent."  *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 530 (S.D.N.Y. 2004), *aff'd*, 2006 WL 508344 (2d Cir. 2006) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).  Eugenia has not satisfied these pleading standards.

Although Eugenia wants to portray MapleWood Equity as deceptive and untrustworthy, it pleads fraud in only the vaguest terms.  <u>The Complaint does not actually identify a single</u>

---

[9]      Should Eugenia attempt to circumvent Rule 9(b) by insisting that its claims against MapleWood Equity do not sound in fraud, then all of its claims are foreclosed as a matter of law by the "no-recourse" provision in the governing documents of the AMC Investor Entities drafted by Eugenia's counsel:

> Section 2.5.  <u>Liability to Third Parties</u>.  No Member [e.g., MapleWood Equity] shall have any personal liability for any obligation of [the AMC Investor Entities], whether such obligations arise in contract, tort or otherwise.

Glaser MTD Aff., Exhs. A & B, § 2.5 (Amended and Restated Limited Liability Company Agreement of AMC Investors LLC *and* Limited Liability Company Agreement of AMC Investors II LLC); *see LaSalle Nat'l Bank v. Perelman*, 141 F. Supp. 2d 451, 459-62 (D. Del. 2001).

[10]    Where the alleged fraud consists of omissions, the plaintiff must set forth "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) (citation omitted). Eugenia cannot base its claims on any purported omissions, however, because the Complaint nowhere alleges that MapleWood Equity had a duty to speak.  *See Lesavoy v. Lane*, 304 F. Supp. 2d 520, 530 (S.D.N.Y. 2004), *aff'd*, 2006 WL 508344 (2d Cir. 2006) ("nondisclosure is fraudulent only when there is a duty to speak").

misrepresentation by MapleWood Equity or the AMC Investor Entities. Eugenia's contention that MapleWood Equity "induce[d]" it into entering the Credit Agreement (Cmplt. ¶ 23) by "fail[ing] to adequately capitalize" the AMC Investor Entities (*id.* ¶ 31) is not only belied by the Credit Agreement itself, it does not identify any material misrepresentation by anyone, let alone specify when and where the purported misrepresentation was made. Eugenia has not come close to satisfying Rule 9(b).[11]  Its claims should be dismissed for that reason alone.

### 2.    Eugenia Has Not Pleaded the Elements of Fraud.

Eugenia's claims should also be dismissed because it has not pleaded the basic elements of fraud. The elements of fraud under New York law are: (1) a misrepresentation or omission of fact; (2) which was false and known to be false at the time it was made; (3) made for the purpose of inducing reliance; (4) justifiable reliance by the plaintiff; and (5) resulting injury. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (N.Y. 1996). A plaintiff can demonstrate fraudulent intent by, either, alleging facts showing that the defendant had a motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (dismissing fraud claim pursuant to Rule 9(b) where plaintiff failed to plead "particularized facts to support the

---

[11]    *See also Mills v. Everest Reins. Co.*, 410 F. Supp. 2d 243, 249 (S.D.N.Y. 2006) (fraud claim inadequate where plaintiff "fail[ed] to allege which individuals made fraudulent or misleading statements, what those statements were and when they were made"); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 287 (S.D.N.Y. 1998) (failure to allege existence, time, or place of fraudulent statements insufficient under Rule 9(b)); *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996) ("Plaintiffs do not specify who these [individuals] were, what they said, [or] to whom they said it …."); *Butala v. Agashiwala*, 916 F. Supp. 314, 322 (S.D.N.Y. 1996) ("Insofar as the Complaint does not identify the specific plaintiffs to whom enumerated communications were made, and fails to state times and places for those communications, or indeed, what was said, it is not pleaded with sufficient particularity."); *Pits, Ltd. v. American Express Bank Int'l*, 911 F. Supp. 710, 715 (S.D.N.Y. 1996) (alter ego theory of veil piercing must be made with greater particularity when alleging that the controlled corporation perpetrated fraud).

inference that the defendants acted recklessly or with fraudulent intent") (internal marks omitted).

The Complaint nowhere alleges that MapleWood Equity intended to defraud Eugenia with respect to any aspect of the AMC Investor Entities. Nor could Eugenia seriously make that claim. MapleWood Equity was not a party to the Credit Agreement, the Guaranty, or any other contract Eugenia can dredge up to "enforce" in this lawsuit. Moreover, Eugenia's attorneys created the AMC Investor Entities, and the Credit Agreement states, quite clearly, that <u>before</u> Eugenia extended the loans in question, the "capital structure" of the AMC Investor Entities was "acceptable to [Eugenia] in its sole discretion," and Eugenia had performed "due diligence" on the AMC Investor Entities. *See* Salomon Aff., Exh. A, ¶ 2.1(f)-(g). Anyway, the suggestion that a well-financed international private equity fund like MapleWood Equity would engage in a premeditated scheme to defraud one of its investor's affiliates, all for the purpose of securing loans to a single portfolio company, defies common sense.

The demise of AMC Computer has been disappointing to Eugenia, Casita, and MapleWood Equity alike. But that disappointment does not make the facts go away. Eugenia chose to accept a guaranty from the AMC Investor Entities and no one else, and cannot be heard to complain about that choice now. "[C]laimants in consensual transactions generally have chosen the parties with whom they have dealt and have some ability, through personal guarantees, security agreements, or similar mechanisms, to protect themselves from loss." *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1577 (10th Cir. 1990) (cited in *Carte Blanche (Singapore) PTE, Ltd. v. Diners Club Internat'l, Inc.*, 758 F. Supp. 908, 913 (S.D.N.Y. 1991)).

In extending the loans to AMC Computer, Eugenia had every opportunity to protect itself from loss through a variety of mechanisms. It decided to accept the Guaranty from the AMC Investor Entities, and it did so with its eyes wide open. The fact that now, more than four years later, the guarantors cannot satisfy their obligations does not give Eugenia the right to select someone else, someone not a party to the Credit Agreement or the Guaranty, to foot the bill.

### III.  CONCLUSION

For all of the foregoing reasons, Defendant MapleWood Equity Partners, L.P. respectfully requests that the Complaint filed by Eugenia VI Venture Holdings, Ltd. be dismissed in its entirety, with prejudice, and that the Court grant such further relief as it deems just and proper.

Dated:  November 27, 2007

**STEVENS & LEE, P.C.**

By:  /s/ Chester B. Salomon
    Chester B. Salomon (CS-2319)
    485 Madison Avenue, 20th Floor
    New York, NY 10022
    (212) 319-8500

-and-

Of Counsel:
**AKERMAN SENTERFITT**
Brian P. Miller, Esq. (*pro hac vice* application filed
    simultaneously herewith)
Samuel S. Heywood, Esq.
One Southeast Third Avenue
Miami, Florida 33131
Telephone: 305-982-5626

***Attorneys for Defendant***