# Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————X

EUGENIA VI VENTURE HOLDINGS, LTD.

                           Plaintiff                     CASE NO.
        - against -                         05 Civ. 5277 (DC)

SURINDER CHABRA, NARINDER CHABRA        NOTICE OF MOTION
and PARVINDER CHABRA                       [Electronically filed]

                           Defendants.

————————————————————————————X

EUGENIA VI VENTURE HOLDINGS, LTD.

                           Plaintiff                     CASE NO.
        - against -                         05 Civ. 5330 (DC)

SURINDER CHABRA, NARINDER CHABRA,
PARVINDER CHABRA and AMC COMPUTER
CORP.

                           Defendants.

————————————————————————————X

| | |
|---|---|
| MOTION BY: | Defendants Surinder Chabra, Narinder Chabra and Parvinder Chabra |
| PLACE: | Courthouse, United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY |
| BEFORE: | Judge Denny Chin |
| RELIEF DEMANDED: | An order remanding these two cases to the state courts because of lack of subject matter jurisdiction. |
| ANSWERING PAPERS: | Must be served by August 23, 2005. |

Dated:  Roseland, NJ
       July 27, 2005

Yours, etc.

S/_____

KIM STEVEN JUHASE

Novak & Juhase

101 Eisenhower Parkway, suite 300

Roseland, NJ 07068

973-795-1206

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

EUGENIA VI VENTURE HOLDINGS, LTD.

                          Plaintiff                             CASE NO.
     - against -                                     05 Civ. 5277 (DC)

SURINDER CHABRA, NARINDER CHABRA            AFFIRMATION
and PARVINDER CHABRA                         [Electronically filed]

                        Defendants.
_____X

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF NEW YORK )

      Surinder Chabra, affirms the following to be true under penalties of perjury.

        1.   I am one of the named defendants in the above action and in Case No. 05Civ.5330.

The other defendants are my brother Narinder Chabra and my wife Parvinder Chabra.  We all

reside and are citizens of the State of New York.  I make this affirmation in support of the

defendants' motion to have both cases 05civ 5277 and 05civ5330 removed to the state courts on

the grounds that this court does not have subject matter jurisdiction.  The defendants also join in

the similar motions of the defendants to dismiss for lack of subject matter jurisdiction in actions

Eugenia VI Venture Holdings v. AMC Computer, Docket No. 05-05397,  Eugenia VI Venture

Holdings, Ltd. v. AMC Investors, LLC, et al,  Docket No. 05-5362, Eugenia VI Venture

Holdings, Ltd. v. Reale, Docket No. 05-5635, Eugenia VI Venture Holdings, Ltd. v. Reale, et al.,

Docket No. 05-5816 and wish for any facts that arise in those actions to be considered in

conjunction with this motion.

        2.   My attorney informs me that in order for this court to have jurisdiction, there must be

complete diversity of citizenship between the parties. The proof is that both the plaintiff and the defendants are citizens of New York.

3.    I am the former President of AMC Computer Corp. All of my contacts with the plaintiff were in New York. It was not until these lawsuits began that I became aware that the plaintiff was claiming they were non-New Yorkers.

4.    As alleged in the complaints, AMC entered into a credit agreement with the Plaintiff in which the plaintiff lent money to my company. The default of AMC under that agreement is at the heart of the two cases my family and I are involved in along with the four other federal actions involving other defendants. The credit agreement was negotiated in New York and was signed in New York. All notices under the agreement were to be sent to Eugenia c/o Eagle Advisors, Inc., 299 Park Avenue, 24th Floor, New York, NY. A copy of the notice page is attached hereto as Exhibit A. The UCC filings for the loan only gave the Eagle Advisors address. Copies of the filings are attached hereto as Exhibit B. Nothing was to be sent to the Cayman Islands.

5.    At one point, AMC wished to borrow additional money from the plaintiff. I was told that Eugenia wanted to meet with me and the CFO of AMC face to face before they would even consider it. I was told to meet with a David Alexander of Eugenia at the offices of Eagle Advisors, which I did.

6.    Paragraph 5.11 (c) of the credit agreement provided that AMC was to enter into a computer services agreement with Eagle Advisors, Inc in a form agreeable to the plaintiffs and which would provide Eagle with 120 hours of free service per year. A copy of that section is attached hereto as Exhibit C.

7.    In addition, AMC entered into an agreement with the plaintiff as "Eagle

Advisors/Eugenia" to install a computer network. A copy of the relevant portions of the "Statement of Work-Eagle Advisors/Eugenia Network Installation" is attached hereto as Exhibit D. The Executive Overview, pg. 4, states that "Eagle Advisors/Eugenia has requested assistance from AMC" to install a computer network connecting New York, Los Angeles and Miami. There was no provision for connecting with the Cayman Islands. A firewall was to be set up to allow a site-to-site connection between New York and L.A. (Pg. 6).On page 7, it states that AMC was to provide daily status reports to "Eagle Advisors/Eugenia" Such reports were made and given to "Eagle Advisors/Eugenia" at the New York offices.

8.    Apparently, the plaintiff does not even have their own office in the Cayman Islands. The plaintiff claims that its address in the Cayman Islands is c/o Bessemer Trust Company (Cayman) Limited, 3rd Floor, CIBC Financial Centre, P.O. Box 694GT, 11 Dr. Roy's Drive, George Town, Cayman Islands. Bessemer is a large trust company with offices world wide. This is their address in the Cayman Islands. Their employee in the Cayman Islands, Ben Lesueur, is a director of the plaintiff and is apparently using his employer's address and his own. A copy of relevant pages from the web site of Bessemer Trust is attached hereto as Exhibit E.

9.    Another person connected to the plaintiff, Ekkehart Hassels-Weller, upon information and belief, another director of the plaintiff, and possibly its CEO, sent his e-mails with an eagle advisors e-mail address, as can be seen in an e-mail he sent out regarding AMC, a copy of which is attached hereto as Exhibit F.

10.    All of the plaintiff's activities have taken place in New York. Upon information and belief, the sole activity of the plaintiff was to make loans in New York. They should be considered a New York citizen.

I declare under penalties of perjury that the foregoing is true and correct.

Executed on July 26, 2005

Surinder Chabra

**EXHIBIT A**

EUGENIA VI VENTURE HOLDINGS, LTD.
$16,000,000

AMENDED AND RESTATED CREDIT AGREEMENT

with

AMC COMPUTER CORP.
as Borrower,
the other Credit Parties signatory thereto,
and AMC Computer Corp. (NJ)

Dated as of January 30, 2003

---

CLOSING DOCUMENTS

---

PARTIES AND COUNSEL

| | |
|---|---|
| Borrower | AMC Computer Corp. ("Borrower") |
| Guarantors/Pledgors | AMC Investors, LLC ("Holdings") |
| | AMC Investors II, LLC ("Holdings II") |
| Chabra | Surinder (Sonny) Chabra ("Chabra") |
| Lender | Eugenia VI Venture Holdings, Ltd. ("Lender") |
| Counsel to the Lender | Gibson, Dunn & Crutcher LLP ("GDC") |
| Counsel to the Borrower | Greenberg Traurig LLP ("GT") |

| DOCUMENTS | TAB NO. |
|---|---|
| I. **Principal Documents** | |
| A. Amended and Restated Credit Agreement, dated as of January 30, 2003, by and among Borrower, Holdings, Holdings II, AMC Computer Corp. (NJ) and Lender (together with all Annexes, Schedules and Exhibits) ...... | 1 |
| B. Initial Borrowing Base Certificate ............................................................ | 2 |
| C. Revolving Note, dated as of January 30, 2003, made by Borrower in favor of Lender in the principal amount of $13,000,000 ............................ | 3 |
| D. Term Note, dated as of January 30, 2003, made by Borrower in favor of Lender in the principal amount of $3,000,000............................................. | 4 |
| E. Guaranty, dated as of January 30, 2003, by and among Holdings and | |

LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. EACH CREDIT PARTY HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF SUCH SUMMONS, COMPLAINTS AND OTHER PROCESS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH CREDIT PARTY AT THE ADDRESS SET FORTH IN ANNEX G OF THIS AGREEMENT AND THAT SERVICE SO MADE SHALL BE DEEMED COMPLETED UPON THE EARLIER OF SUCH CREDIT PARTY'S ACTUAL RECEIPT THEREOF OR 3 DAYS AFTER DEPOSIT IN THE UNITED STATES MAILS, PROPER POSTAGE PREPAID.

11.10  Notices.  All notices, requests and other communications under this Agreement and any other Loan Document shall be in writing (including by facsimile transmission, provided that any matter transmitted by Borrower by facsimile shall be immediately confirmed by a telephone call to the recipient at the number specified on Annex G hereto) unless otherwise provided for herein and shall be personally served, or sent by facsimile, overnight service or mail, in each case, to the following address or facsimile number:

(A) If to Lender, at

    Eugenia VI Venture Holdings, Ltd.
    c/o Eagle Investors, Inc.
    299 Park Avenue, 24th Floor
    New York, New York  10171
    Attention: David L. Alexander
    Telecopier No.:  (212) 821-3700
    Telephone No.:  (212) 821-4324
    alexander@eagleadvisors.com

    with copies to:

    Gibson, Dunn & Crutcher LLP
    200 Park Avenue
    New York, New York 10166
    Attention: Dennis Friedman, Esq.
    Telecopier No.:  (212) 351-3900
    Telephone No.:  (212) 351-4035

(B) If to Borrower, at

    AMC Computer Corp.
    129 West 27th Street
    New York, New York 10001
    Attention: Surinder (Sonny) Chabra
    Telecopier No.:  (212) 620-3085
    Telephone No.:  (212) 620-0700 Ext. 1280

46

**EXHIBIT B**

Copyright 2004 Dun & Bradstreet, Inc.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED
THROUGH THE NEW YORK DEPARTMENT OF STATE ***
NEW YORK DEPARTMENT OF STATE, UCC RECORD

Debtors: AMC COMPUTER CORP.

Debtor Address: AMC COMPUTER CORP.
129 W. 27TH STREET
NEW YORK, NY 10001
DUNS: 112990841

Secured Parties: EUGENIA VI VENTURE HOLDINGS, LTD. C/O EAGLE ADVISORS, INC.

Secured Party Address: EUGENIA VI VENTURE HOLDINGS, LTD. C/O EAGLE
ADVISORS, INC.
299 PARK AVENUE, 24TH FLOOR
NEW YORK, NY 10171

Filing Type: AMENDMENT

Filing Date: 4/9/2002

Filing Number: 02081913

Original Filing Number: 01170457

Original Filing Date: 9/7/2001

Filing Office: SECRETARY OF STATE/UCC DIVISION
162 WASHINGTON AVE
ALBANY, NY 12210

Collateral: ACCOUNT(S) AND PROCEEDS; INVENTORY AND PROCEEDS; GENERAL INTANGIBLE(S) AND
PROCEEDS; ACCOUNTS RECEIVABLE AND PROCEEDS; CONTRACT RIGHTS AND PROCEEDS;
COMPUTER EQUIPMENT AND PROCEEDS

Copyright 2004 Dun & Bradstreet, Inc.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED
THROUGH THE NEW YORK DEPARTMENT OF STATE ***
NEW YORK DEPARTMENT OF STATE, UCC RECORD

Debtors: AMC COMPUTER CORP.

Debtor Address: AMC COMPUTER CORP.
    129 W 27TH STREET
    NEW YORK, NY 10001
    DUNS: 112990841

Secured Parties: EUGENIA VI VENTURE HOLDINGS, LTD. C/O EAGLE ADVISORS, INC.

Secured Party Address: EUGENIA VI VENTURE HOLDINGS, LTD. C/O EAGLE
    ADVISORS, INC.
    225 LIBERTY ST, WORLD FINANCIAL CENTER, SO TOWER, FL
    38
    NEW YORK, NY 10080

Filing Type: INITIAL FILING

Filing Date: 9/7/2001

Filing Number: 01170457

Filing Office: SECRETARY OF STATE/UCC DIVISION
    162 WASHINGTON AVE
    ALBANY, NY 12210

Collateral: ACCOUNT(S) AND PROCEEDS; INVENTORY AND PROCEEDS; GENERAL INTANGIBLE(S) AND
PROCEEDS; ACCOUNTS RECEIVABLE AND PROCEEDS; CONTRACT RIGHTS AND PROCEEDS;
NEGOTIABLE INSTRUMENTS AND PROCEEDS; COMPUTER EQUIPMENT AND PROCEEDS; EQUIPMENT
AND PROCEEDS

Copyright 2004 Dun & Bradstreet, Inc.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY. CERTIFICATION CAN ONLY BE OBTAINED
THROUGH THE NEW YORK DEPARTMENT OF STATE ***
NEW YORK DEPARTMENT OF STATE, UCC RECORD

Debtors: AMC COMPUTER CORP.

Debtor Address: AMC COMPUTER CORP.
129 WEST 27TH STREET
NEW YORK, NY 10001
DUNS: 112990841

Secured Parties: EUGENIA VI VENTURE HOLDINGS, LTD. C/O EAGLE ADVISORS, INC.

Secured Party Address: EUGENIA VI VENTURE HOLDINGS, LTD. C/O EAGLE
ADVISORS, INC.
299 PARK AVENUE, 24TH FLOOR
NEW YORK, NY 10171

Filing Type: INITIAL FILING

Filing Date: 1/30/2003

Filing Number: 0301300220718

Filing Office: SECRETARY OF STATE/UCC DIVISION
162 WASHINGTON AVE
ALBANY, NY 12210

Collateral: ACCOUNT(S) INCLUDING PROCEEDS AND PRODUCTS; CHATTEL PAPER INCLUDING
PROCEEDS AND PRODUCTS; GENERAL INTANGIBLE(S) INCLUDING PROCEEDS AND PRODUCTS;
COMPUTER EQUIPMENT INCLUDING PROCEEDS AND PRODUCTS; INVENTORY INCLUDING PROCEEDS
AND PRODUCTS; EQUIPMENT INCLUDING PROCEEDS AND PRODUCTS; FIXTURES INCLUDING
PROCEEDS AND PRODUCTS; ACCOUNTS RECEIVABLE INCLUDING PROCEEDS AND PRODUCTS;
CONTRACT RIGHTS INCLUDING PROCEEDS AND PRODUCTS; MACHINERY INCLUDING PROCEEDS
AND PRODUCTS; BUSINESS MACHINERY/EQUIPMENT INCLUDING PROCEEDS AND PRODUCTS;
VEHICLES INCLUDING PROCEEDS AND PRODUCTS; PARTNERSHIP INTEREST INCLUDING PROCEEDS
AND PRODUCTS; NEGOTIABLE INSTRUMENTS INCLUDING PROCEEDS AND PRODUCTS

**EXHIBIT C**

testing as Lender deems appropriate, including subsurface sampling of soil and groundwater. Borrower shall reimburse Lender for the costs of such audits and tests and the same will constitute a part of the Obligations secured hereunder.

5.9     Landlords' Agreements, Mortgagee Agreements and Bailee Letters. Each Credit Party shall obtain a landlord's agreement, mortgagee agreement or bailee letter, as applicable, from the lessor of each leased property, mortgagee of owned property, if any, or bailee with respect to any warehouse, processor or converter facility or other location where Collateral is stored or located, which agreement or letter shall contain a waiver or subordination of all Liens or claims that the landlord, mortgagee or bailee may assert against the Collateral at that location, and shall otherwise be reasonably satisfactory in form and substance to Lender. With respect to such locations or warehouse space leased or owned as of the Closing Date and thereafter, if Lender has not received a landlord or mortgagee agreement or bailee letter as of the Closing Date (or, if later, as of the date such location is acquired or leased), Borrower's Eligible Inventory at that location shall, in Lender's discretion, be excluded from the Borrowing Base or be subject to such Reserves as may be established by Lender in its sole discretion. After the Closing Date, no real property or warehouse space shall be leased by any Credit Party and no Inventory of any Credit Party shall be shipped to a processor or converter under arrangements established after the Closing Date without the prior written consent of Lender (which consent, in Lender's discretion, may be conditioned upon the exclusion from the Borrowing Base of Eligible Inventory at that location or the establishment of Reserves acceptable to Lender) or, unless and until a reasonably satisfactory landlord agreement or bailee letter, as appropriate, shall first have been obtained with respect to such location. Each Credit Party shall timely and fully pay and perform its obligations under all leases and other agreements with respect to each leased location or public warehouse where any Collateral is or may be located. To the extent otherwise permitted hereunder, if any Credit Party proposes to acquire a fee ownership interest in Real Estate after the Closing Date, it shall first provide to Lender a mortgage or deed of trust granting the Lender a first priority Lien on such Real Estate, together with environmental audits, mortgage title insurance commitment, survey, local counsel opinion(s), and, if required by Lender, supplemental casualty insurance and flood insurance, and such other documents, instruments or agreements reasonably requested by Lender, in each case, all in form and substance reasonably satisfactory to Lender.

5.10     Further Assurances. Each Credit Party executing this Agreement agrees that it shall and shall cause each other Credit Party to, at such Credit Party's expense and upon request of Lender, duly execute and deliver, or cause to be duly executed and delivered, to Lender such further instruments and do and cause to be done such further acts as may be necessary or proper in the reasonable opinion of Lender to carry out more effectively the provisions and purposes of this Agreement or any other Loan Document.

5.11     Post-Closing Obligations.

(a)     Borrower shall dissolve AMC-New Jersey within 150 days of the Closing Date.

30

(b) <u>Life Insurance</u>. Borrower shall use its best efforts to deliver to Lender a letter of undertaking regarding obtaining an increase of the key man life insurance policy in favor of Lender on the life of Chabra in an amount of not less than $5,000,000 within 150 days after the Closing Date.

(c) <u>Computer Services Agreement</u>. Borrower shall have entered into a computer services agreement with Eagle Investors, Inc. in form satisfactory to Lender within sixty (60) days of the Closing Date and which shall provide for at least 120 hours of service per annum.

## 6.  NEGATIVE COVENANTS

Each Credit Party executing this Agreement jointly and severally agrees as to all Credit Parties that, without the prior written consent of the Lender, from and after the date hereof until the Termination Date:

6.1    <u>Mergers, Subsidiaries, Etc.</u>

No Credit Party shall directly or indirectly, by operation of law or otherwise, (a) form or acquire any Subsidiary, or (b) merge with, consolidate with, acquire all or substantially all of the assets or Stock of, or otherwise combine with or acquire, any Person without Lender's prior written consent. The Accounts and Inventory of any acquired Person shall not be included in Eligible Accounts and Eligible Inventory without the prior written consent of Lender.

6.2    <u>Investments; Loans and Advances</u>. Except as otherwise expressly permitted by this <u>Section 6</u>, no Credit Party shall make or permit to exist any investment in, or make, accrue or permit to exist loans or advances of money to, any Person, through the direct or indirect lending of money, holding of securities or otherwise, except that:

(a)    subject to Section 5.11, each Credit Party may maintain its existing investments in its Subsidiaries as of the Closing Date;

(b)    so long as no Default or Event of Default has occurred and is continuing and there is no outstanding Revolving Loan balance and subject to the provisions in Annex B, Borrower may make investments in (i) marketable direct obligations issued or unconditionally guaranteed by the United States of America or any agency thereof maturing within one year from the date of acquisition thereof, (ii) commercial paper maturing no more than one year from the date of creation thereof and currently having the highest rating obtainable from either Standard & Poor's Ratings Services or Moody's Investors Service, Inc., (iii) certificates of deposit, maturing no more than one year from the date of creation thereof, issued by commercial banks incorporated under the laws of the United States of America, each having combined capital, surplus and undivided profits of not less than $300,000,000 and having a senior unsecured rating of "A" or better by a nationally recognized rating agency (an "<u>A Rated Bank</u>"), (iv) time deposits, maturing no more than 30 days from the date of creation thereof with A Rated

31

**EXHIBIT D**



Making Complex Technologies Simple

## STATEMENT OF WORK – EAGLE ADVISORS/EUGENIA NETWORK INSTALLATION

June 13, 2003

 **Professional Services Organization**

*This document contains AMC Corporation confidential and proprietary information. No disclosure, or use of any portion of these materials, may be made without the express written consent of AMC Corporation. No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording or any other information storage and retrieval system.*

**AMC INFRASTRUCTURE UPGRADE**

## EXECUTIVE OVERVIEW

Eagle Advisors/Eugenia has requested assistance from AMC to install and configure an updated, state of the art network infrastructure. Presently there are 3 locations (NY, Los Angeles and Miami) that require connectivity. The new infrastructure will include a secure link between all sites and allow secure access to a webserver. Additionally, a Microsoft Exchange Server will be utilized for email functionality which will include a later proposed Disaster Recovery solution that replicates all data between the New York and Los Angeles sites.

We are pleased to provide this Statement of Understanding to Eagle Advisors/Eugenia for the purpose of aligning objectives and evaluating services that will be provided.

Copyright ©AMC Corporation.  Confidential and Proprietary.  All rights reserved.

AMC INFRASTRUCTURE UPGRADE

## STATEMENT OF WORK

AMC will assign highly qualified technical resources that will meet the objectives stated during the kick-off meeting between AMC and Eagle Advisors/Eugenia. This Statement of Work details the roles and responsibilities for each resource involved in this project as follows:

- 🖥 AMC will provide the technical resources capable of performing the work requested by Eagle Advisors/Eugenia and described in the deliverables section of this document.

- 🖥 AMC will make every effort to accommodate Eagle Advisors/Eugenia's schedule upon request; however, a seven-business day advanced notice of the Eagle Advisors/Eugenia start date for any resources is required for AMC to guarantee resources. Eagle Advisors/Eugenia will also provide a schedule for all requirements.

- 🖥 AMC will act as a technical reference for the areas of concern as expressed by Eagle Advisors/Eugenia and as listed in the deliverables section.

- 🖥 AMC will not make any modifications to existing equipment or services, without the written approval of Eagle Advisors/Eugenia. The objective is for AMC to make a best effort in assessing the current state of the infrastructure and migrating the environment to the agreed upon upgraded infrastructure.

Copyright ©AMC Corporation. Confidential and Proprietary. All rights reserved.

AMC INFRASTRUCTURE UPGRADE

## DELIVERABLES REQUESTED

- 🖳 Network Discovery
  - o The current environment will be documented to provide an existing state document to be used as a base reference.

- 🖳 Install and configure networking infrastructure in the NY location as follows:
  - o Firewall to allow a site-to-site VPN to the Los Angeles office and secure connectivity from the internet to a DMZ housing a webserver
  - o 24-port 3Com Switch with 2 GB ports for the internal network
  - o 16-port 3Com Switch for connectivity to the DMZ
  - o 42-U Rack and all requisite equipment as outlined in this document

- 🖳 Install and configure 4 servers in the rack as follows:
  - o Compaq DL360 to be used as a Microsoft Windows Active Directory Server, Backup Server, Antivirus Server and for File and Print services
  - o Compaq DL360 to be used as a Microsoft Exchange Server
  - o Compaq DL360 to be used as a RightFax server
  - o Compaq DL360 to be used as a Web/Gateway Server

- 🖳 Backup:
  - o To provide backup functionality for the network, an Autoloader Backup Unit, along with requisite software, will be installed.

- 🖳 Additional services provided:
  - o Work with Eagle Advisors/Eugenia to provide new, current network documentation.
  - o Discuss Data Replication requirements and implementation. This will be implemented as phase two and will be addressed under a separate SOW post installation.
  - o Rapid Response Agreement for 7x24 support.

Copyright ©AMC Corporation. Confidential and Proprietary. All rights reserved.

**AMC INFRASTRUCTURE UPGRADE**

## ASSUMPTIONS

- AMC understands the myriad of issues that typically surface during upgrade projects and the necessity to appoint resources during execution. Our technical resources will jointly report to, and receive direction, from AMC and Eagle Advisors/Eugenia to avoid miscommunication. In order to facilitate accurate communication, AMC will provide daily status reports to Eagle Advisors/Eugenia detailing the work completed, work still outstanding and any issues outstanding.

- During the execution of work, Eagle Advisors/Eugenia will be present, on-site, to authorize tasks, provide all access required for the completion of the project, and inform about or escalate issues as necessary.

- Any expenses incurred by AMC, to facilitate unexpected needs that arise during the course of execution of work, will be charged back to Eagle Advisors/Eugenia. Such expenses may include tools or supplies that need to be purchased out-of-pocket by on-site resources.

- Eagle Advisors/Eugenia is responsible for all parts and components required to properly perform the installation of all hardware.

- AMC understands that a Windows Domain and Messaging Platform currently exists at Eagle Advisors/Eugenia Los Angeles office and that may become a Domain Member of the new Network in New York City.

- It is understood that AMC will be configuring VPN access to facilitate site-to-site WAN access and well as secure access for a number of remote clients. It is also assumed that connectivity exists at the remote sites as well as with the remote users.

- Access will be provided to the Eagle Advisors/Eugenia environment where AMC is to perform work.

- It is also agreed and understood in connection with any Software that AMC and its vendors shall in no event be liable for Eagle Advisors/Eugenia loss of programs, data or other information stored on magnetic or other media for any reason whatsoever including but not limited to operator error or negligence, improper operation of hardware, electrical disturbances and any others.

- Eagle Advisors/Eugenia may initiate changes to this SOW by providing a written request to AMC. AMC will review any change requests and advise Eagle Advisors/Eugenia if the request can be accepted and if so, price and schedule impact. Changes will be added as an Amendment to this SOW only when both parties agree and have signed an Amendment that reflects the nature of the change, the price and schedule impacts.

- It is assumed that Eagle Advisors/Eugenia legally owns all of the necessary software and licenses.

Copyright ©AMC Corporation. Confidential and Proprietary. All rights reserved.

**AMC INFRASTRUCTURE UPGRADE**

- It is assumed that an Internet connection exists at the new facility and that DNS and MX records are present.

- All AMC resources will be granted reasonable access to all necessary facilities, systems, hardware and software required to achieve the objectives described in the Deliverables section of this document.

- All Eagle Advisors/Eugenia personnel participating on the project understand, accept, and abide by the roles and responsibilities for project tasks, communications, and change.

- Some work, such as documentation, may be performed off-site.

- It is also agreed and understood in connection with any Software that AMC and its vendors shall in no event be liable for Eagle Advisors/Eugenia's loss of programs, data or other information stored on magnetic or other media for any reason whatsoever including but not limited to operator error or negligence, improper operation of hardware, electrical disturbances and any others.

- Normal hours of operation are between 8:30-5:30, Monday – Friday and charged the standard rate. Overtime is between the hours of 5:30pm and 9:00am Monday-Friday, Saturday (24 hrs) and charged at a rate of 1.5 x standard rate, Double-Time is 24 hrs Sunday to 09:00am Monday and charged at 2x standard rate.

- AMC will make every effort to accommodate Eagle Advisors/Eugenia's schedule upon request; however, a five-business day advanced notice of the Eagle Advisors/Eugenia's start date for any resources is required for AMC to guarantee resources. Eagle Advisors/Eugenia's will also provide a schedule for all requirements.

**EXHIBIT E**

At Bessemer, we believe that successful wealth management is determined by personal relationships and shared values. Thus, the professionals in Bessemer's regional offices have first-hand understanding of the local concerns and commitments of their clients, and they translate that understanding into useful knowledge for the fulfillment of their client responsibilities.



**New York, New York**

Michael R. Weaver

630 Fifth Avenue
New York, New York 10111-0333
(212) 708-9295



**Chicago, Illinois**

David E. McNeel

70 West Madison Street
Suite 5400
Chicago, Illinois 60602-4213
(312) 220-9898



**Miami, Florida**

George H. Wilcox

801 Brickell Avenue
Miami, Florida 33131-2900
(305) 372-5005



**Washington, D.C.**

Lawrence P. Fisher, II

1050 Connecticut Avenue N.W.
Suite 1060
Washington, D.C. 20036-5303
(202) 659-3330



**Palm Beach, Florida**

Brandon Reid

222 Royal Palm Way
Palm Beach, Florida 33480-4394
(561) 655-4030



**London, England**

Bill Tyne

1 Stanhope Gate
London W1K 1AF
44-207-290-9300



**Naples, Florida**

David Bunce

850 Park Shore Drive
Suite 204
Naples, Florida 34103
(239) 435-0034



**Los Angeles, California**

Peter J. Zarifes

601 South Figueroa Street
Suite 4450
Los Angeles, California 90017
(213) 892-0900



**San Francisco, California**

Robert G. Vanneman

101 California Street
Suite 2500
San Francisco, California 94111
(415) 291-1810



**Atlanta, Georgia**

Philip P. Cave

3455 Peachtree Road, N.E.
Suite 850
Atlanta, Georgia 30326
(404) 965-9300



**Bessemer Trust Company (Cayman) Limited**

Ben Lesueur

Edward Street, Box 694
Grand Cayman, Cayman Islands, British
West Indies
(345) 949-6674



**Dallas, Texas**

Scott W. Hancock

300 Crescent Court
Suite 800
Dallas, TX 75201
(214) 981-9400



**Woodbridge, New Jersey**

Angelo Campanile

100 Woodbridge Center Drive
Woodbridge, NJ 07095-1191
732-855-0800



**Wilmington, Delaware**

Peter Cutler

1007 Orange Street
Suite 1450
Wilmington, Delaware 19801
(302) 230-2675

© 1996-2005 The Bessemer Group, Incorporated. All rights reserved.
Questions or comments about our website?
Send us Email: feedback@bessemer.com
Privacy Notice

You may be visiting our website because you have heard about us, a friend recommended us, or perhaps you are just curious. So, as an introduction to Bessemer, I would like to quickly tell you where we have been and where we are going and to share some information about us that just might surprise you.



Bessemer Trust is one of the oldest and largest wealth management firms with a "family office" tradition. While we began as the Phipps family office in 1907, today we supervise in excess of $42.4 billion in assets on behalf of over 1,800 clients. We have the best staff-to-client ratio in the industry. What we do for our clients is provide a focused, fully integrated combination of asset management and estate, tax and wealth transfer planning.

Bessemer Trust is universally recognized for the depth and quality of the personal service we provide our clients. What you may not know is the following:



- We manage approximately $4.4 billion in alternative asset investments such as private equity, exchange funds, real estate, hedge funds and one of the industry's largest venture capital fund-of-funds
- We pioneered sophisticated estate planning and wealth transfer strategies in conjunction with our alternative asset investments

That's where we have been. We are proud of our role in defining wealth management in the 20th century, and we are equally excited about our opportunity to expand it in the 21st. We will accomplish this by strategically using technology to improve our capability to do what we've always done - focus relentlessly on our clients.

© 1996-2005 The Bessemer Group, Incorporated. All rights reserved.
Questions or comments about our website?
Send us Email: feedback@bessemer.com
Privacy Notice

For nearly a century, Bessemer Trust has been defining wealth management through personalized client service and expert financial counseling to high net worth individuals and select institutions.

Unlike other firms, Bessemer Trust offers a comprehensive array of wealth management services, including:

- Investment Management
- Financial, Tax and Estate Planning
- Fiduciary Counseling
- Family Business Planning
- Personal Risk Management
- Strategic Philanthropy

Bessemer Trust supervises in excess of $42.4 billion for over 1,800 clients. Bessemer's industry leading client-to-staff ratio of 3:1 ensures the highest degree of individual service and confidentiality. Moreover, because Bessemer is privately owned, account teams remain stable and focused on the priorities of individual client relationships. Our clients include:

- High Net Worth Individuals and Families
- Endowments and Foundations
- International Investment Companies and Trusts

Headquartered in New York City, Bessemer also provides face-to-face fiduciary consulting through a number of regional offices firmly grounded in the communities they serve. These offices are located in Palm Beach, Miami, and Naples, FL; San Francisco, Los Angeles , CA; Dallas, TX; Washington, DC; Chicago, IL; Atlanta, GA; Wilmington, DE; Woodbridge, NJ; London and the Cayman Islands.

© 1996-2005 The Bessemer Group, Incorporated. All rights reserved.
Questions or comments about our website?
Send us Email: feedback@bessemer.com
Privacy Notice

**EXHIBIT F**

Paul Alderdice

From:       Reale, Robert J. [rjreale@maplewoodpartners.com]
Sent:       Saturday, June 14, 2003 7:57 PM
To:         Greg Wagner (E-mail)
Cc:         Goldberg, Steven
Subject:    FW: AMC

Regarding number 1. Did we not give him his quarterly audit of the compliance with the loan agreement? Greg, you had
a good response regarding tax lawyers. Could
You write that in an email to me. Forget about the CCO appointment we all read that the same

-----Original Message-----
From: Ekkehart Hassels-Weller [mailto:ehw@eagleadvisors.com]
Sent: Saturday, June 14, 2003 5:17 PM
To: Glaser, Robert V.
Cc: Reale, Robert J.; David Alexander
Subject: AMC

Dear Bob:

David Alexander had an initial opportunity to review your memorandum on AMC and discuss the issues. Before we
schedule a meeting with you (preferably in New York sometime in July), three things should happen:

1)   AMC to deliver to David Alexander the information previously requested (our quarterly audit of the compliance
     with the loan agreement). I would encourage AMC to work on this energetically, so that follow up questions can
     be avoided. The review of this information will allow us to assess AMC's compliance with the existing agreement.

2)   If AMC is indeed of the opinion that the auditors may have taken an inappropriately harsh approach with respect
     to the write downs, then AMC should engage a tax attorney of a reputable firm (e.g. Gibson, Dunn or Chadbourne
     & Parke, or even the Miami firm you have previously used). The tax attorney will likely be able to successfully
     challenge the auditors on AMC's behalf, if AMC's complaint is justified. This should happen before AMC's Board
     approves the audit. Eagle Advisors may want to discuss the issues with the auditors first hand as well, so AMC
     should keep us closely advised on the process and schedule.

3)   The issue of secondary liens can only be addressed when we are convinced that AMC and Maplewood will
     make, and act on, an unwavering commitment to keep Eagle Advisors informed on all company developments, as
     required under the loan agreement. The information about the COO appointment was a regrettable and damaging
     lapse and should not have been allowed to happen. AMC needs to start familiarizing their operations people with
     the requirements of the loan agreement, and Maplewood needs to assist them in communication timely and
     competently with us.

     If we cannot convince ourselves that significant progress has been made by AMC in this respect, then we cannot
     be confident that AMC and Maplewood will actually tell us in a timely fashion about really important adverse
     developments at AMC. In case of a full default, we may find ourselves competing against better equipped lien
     holders to physically secure AMC's assets. We have no intention to go down that road. AMC needs to become
     much more pro-active than they have been to convince us that they take their commitment serious and that all
     relevant company personnel shares this commitment.

We are not ruling out a positive answer to the two main requests you have made once we are satisfied on the three issues
above.

Hope this response is helpful. Best regards. - Ekkehart

6/9/2005

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————X

EUGENIA VI VENTURE HOLDINGS, LTD.

                              Plaintiff

            - against -

SURINDER CHABRA, NARINDER CHABRA
and PARVINDER CHABRA

                          Defendants.

——————————————————————————X

EUGENIA VI VENTURE HOLDINGS, LTD.

                              Plaintiff

            - against -

SURINDER CHABRA, NARINDER CHABRA,
PARVINDER CHABRA and AMC COMPUTER
CORP.

                          Defendants.

——————————————————————————X

CASE NO.
05 Civ. 5277 (DC)
MEMORANDUM OF
LAW
[Electronically filed]

CASE NO.
05 Civ. 5330 (DC)

    1.    This memorandum of law is submitted in support of the defendants' motion in these

two actions to remand these matter to the state court on the ground that this court lacks subject

matter jurisdiction. There is no diversity of the parties since they are all citizens of New York

State. The facts are as stated in the affirmation of defendant Surinder Chabra attached hereto.

    2.    The plaintiff corporation is incorporated in the British Virgin Islands and is therefore

a citizen there. However, every corporation is also a citizen of the state where its principal place

of business is located. 28 U.S.C. §1332 (c) (1). There are two different tests in the Second

Circuit to determine this. If the corporation is centralized, "its principal place of business is

where it has its greatest impact on or contact with the general public." Helmsley-Spear, Inc. v.

1

Ramfis Realty, Inc., 2003 U.S. Dist. Lexis 21309 (S.D.N.Y., Nov. 24, 2003) at *5; Sterling Fifth

Assoc. v. Carpentile Corp., Inc., 2003 U.S. Dist. Lexis 16922 (S.D.N.Y., Sept. 26, 2003) at *8-9.

The second test is where a corporation's operations are decentralized and geographically

widespread. In that case, its principal place of business is where overall policy originates. Id.

   3. The burden of proof is on the party invoking federal jurisdiction and all doubts are to

be resolved in favor of remanding a case. Auriemmr Consulting Group, Inc. v. Universal

Savings Bank, F.A., 367 F.Supp.2d 311, 312-13 (E.D.N.Y. 2005); Sterling Fifth Assoc. v.

Carpentile Corp., Inc., supra, at *15.

   4. The only evidence of plaintiff's activity in the Cayman Islands is an address which is

not its office but that of Bessemer Trust, which employs one of the plaintiff's directors. It is not

even incorporated there.

   5. Where there is any evidence of activity by the plaintiff it is in New York. The credit

agreement and all of its attached documents were negotiated and signed in New York. The filed

UCCs listed the plaintiff as being located c/o Eagle Advisors in New York. All notices under

the agreements were to go to the same address in New York. It required AMC to provide free

computer service to Eagle Advisors in New York. When defendant Surinder Chabra wished to

negotiate an increase in the loan amount from the plaintiff, he was told to meet with them in

New York. None of the defendants contacted the plaintiff in the Cayman Islands.

   6. The most direct proof that the plaintiff's principal place of business was in New York

is the "Statement of Work-Eagle Advisors/Eugenia Network Installation" agreement between

AMC and the plaintiff. The plaintiff did not even try to distinguish between itself and its New

York alter ego. All work was to be done for the plaintiff in New York and a computer network

was set up to link New York with Miami and Los Angeles but pointedly not the Cayman Islands. New York was to be the hub of the network.

7.    It is obvious that the plaintiff has no interest in or connection with the Cayman Islands except as a mailing address to which no notices or correspondence is to be sent. The mere fact that a single corporate officer or director may reside on the Islands is not enough to confer citizenship on the corporation. Helmsley-Spear, Inc. v. Ramfis Realty, Inc., supra at *7.

8.    Under the test for a centralized corporation, which we believe the plaintiff to be, the greatest impact or contact it has is with New York. Upon information and belief, its major or only asset is the credit agreement with AMC. That asset is located in New York,

9.    Even if the plaintiff was considered to be non-concentrated, it will fail to meet its burden that the Cayman Islands is the nerve center of its operations. It was not to be connected to their computer network. No notices were to be sent there. It appears that all of their officers except for one is located in New York. E-mails to Eugenia was sent to and from Eagle Advisors in New York. It does not even have an office in the Cayman Islands. The mere fact that the plaintiff declares in its contracts that the Cayman Islands is its principal place of business is not enough. Helmsley-Spear, Inc. v. Ramfis Realty, Inc., supra at *7.

10.    The plaintiff will not be able to meet its heavy burden of proof. This matter should be remanded to the state courts.

Wherefore, the defendants' motion should be granted.

Dated:  July 27, 2005

S/_____
KIM STEVEN JUHASE (KJ 6905)
Novak & Juhase
101 Eisenhower Parkway, suite 300
Roseland, NJ 07068

3

973-795-1206