UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------- x | | |
| EUGENIA VI VENTURE HOLDINGS, LTD., | : : : | 07-CIV-9417 |
| Plaintiff, | : : : | (Batts, J.) (Eaton, M.J.) |
| - v – | : : | |
| MAPLEWOOD EQUITY PARTNERS, LP, | : : : | |
| Defendant. | : : | |
| ------------------------------------------------- x | | |

**DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

STEVENS & LEE, P.C.
485 Madison Avenue, 20th Floor
New York, New York 10022-5803
Telephone: (212) 319-8500
Facsimile: (212) 319-8505

*Counsel for Defendant*

{M2632569;2}

## I. PRELIMINARY STATEMENT

Defendant Maplewood Equity Partners, L.P. ("MapleWood Equity") respectfully submits this reply memorandum, together with the accompanying Reply Affidavit of Robert V. Glaser ("Glaser Reply Aff."), and exhibit thereto, in further support of its Motion to Dismiss the Complaint brought against it by Plaintiff Eugenia VI Venture Holdings, Ltd. ("Eugenia").

Eugenia's opposition papers[1] confirm that this Court lacks subject matter jurisdiction, and confirm that this case is little more than an attempt to forum shop Eugenia's alter ego claim in the wake of its dismissal at the state court level. *See* Memo. at 8 n.5. Indeed, Eugenia does nothing to refute any of MapleWood Equity's arguments for dismissing its alter ego theory of liability. Instead, Eugenia chooses to ignore the avalanche of facts aligned against it, Opp. at 1 n.2, and focuses its attention on distracting the Court's attention from the gaping holes in the Complaint.

Eugenia's rhetoric should be seen for what it is: an attempt to achieve through the courts what it failed to achieve through the Credit Agreement and the Guaranty. Eugenia wants to make MapleWood Equity – a nonparty to those agreements – responsible for the liabilities of the AMC Investor Entities. But the irony is that Eugenia had far more control over the transactions than anyone else. Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b) require dismissal of Eugenia's lawsuit with prejudice.

---

[1]   Citations to MapleWood Equity's Motion to Dismiss and Incorporated Memorandum of Law are referenced herein as "Memo. at __," and citations to Eugenia's Memorandum of Law in Opposition to Motion to Dismiss is referenced herein as "Opp. Memo. at __."

## II.  ARGUMENT

A.  **Eugenia Cannot Possibly Demonstrate Diversity.**

Eugenia's insistence on maintaining this lawsuit in federal court smacks of desperation. For instance, Eugenia makes much of the fact that MapleWood Equity's June 1998 private placement memorandum states that it is a limited partnership for "U.S. Investors." Opp. Memo. at 4. The fact is, though, that MapleWood Equity has multiple foreign limited partners, *see* Memo. at 8-10; Glaser MTD Aff. ¶ 5; Glaser Reply Aff. ¶ 2, and nothing in MapleWood Equity's formation documents alters that reality.[2] Because there are aliens on both sides of the litigation, diversity is lacking, and the Court need proceed no further in its analysis.

By insisting that MapleWood Equity has not <u>disproved</u> jurisdiction, Eugenia has it exactly backwards. It is not MapleWood Equity's burden to disprove subject matter jurisdiction, but rather Eugenia's burden to demonstrate that jurisdiction exists. Because federal courts are courts of limited jurisdiction, the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Eugenia therefore bears the burden of proving that this case is properly before the Court. *See United States v. New York*, No. 5:04-CV-00428 (NAM/DEP), 2007 WL 951576, *2 (N.D.N.Y. Mar. 27, 2007). The legal conclusions in the Complaint do not avail Eugenia, and "argumentative inferences favorable to [Eugenia] should not be drawn." *Jarvis v. Cardillo*, No. 98 CIV. 5793 RWS, 1999 WL 187205, *2 (S.D.N.Y. Apr. 6, 1999) (citation and internal marks omitted).[3]

---

[2]  Business realities, and not MapleWood Equity's "formation documents," determined who invested in the funds. All foreign and U.S. investors were given a choice of the fund into which they invested. So, for example, Casita L.P., a Delaware company that claims its principal place of business is New York, invested in MapleWood Equity's parallel fund, MapleWood Equity Partners (Offshore) Ltd., a fund "established for non-U.S. investors." *See* Opp. Memo. at 4. As explained in MapleWood Equity's initial memorandum (Memo. at 2), Casita L.P. is Eugenia's affiliate, and invested $2.5 million into AMC Investors I.

[3]  Eugenia's contention that Glaser's affidavit testimony converts the instant motion into one for summary judgment (Opp. Memo. at 4 n.4) is plainly incorrect. Courts are not confined to the four corners of the Complaint in deciding motions to dismiss for lack of subject-matter jurisdiction. *See* Memo. at 7 (citing authorities). "[T]he court

Confronted with this serious burden, Eugenia offers absolutely nothing to support its invocation of jurisdiction.  The Complaint does not even mention the citizenship of MapleWood Equity's limited partners, and Eugenia's opposition papers shed zero light on the subject.  Eugenia's failure to carry its burden requires dismissal now, on the pleadings, before Eugenia is permitted to waste more of the Court and the parties' resources.  *See generally* Wright et al., 13 FED. PRAC. & PROC. Juris.2d § 3522 (2007) ("Upon a finding that it has no subject matter jurisdiction, the district court should strike the case from its docket[.]").

Notwithstanding its utter inability to plead or prove diversity, Eugenia maintains that it is entitled to jurisdictional discovery and an evidentiary hearing.  Opp. Memo. at 5-6.  The circumstances, however, do not warrant further inquiry.  For all of its bluster, Eugenia has done nothing to undermine the facts averred to by Robert Glaser.  His uncontested affidavit proves that MapleWood Equity is an alien for purposes of diversity jurisdiction, and that jurisdiction is lacking.  Glaser MTD Aff. ¶ 5.  Eugenia calls Mr. Glaser's sworn testimony "unsupported" (Opp. Memo. at 4), but courts routinely rely on affidavits to resolve questions of subject matter jurisdiction.  *See Jarvis*, 1999 WL 187205, at *2 (citing authorities).

This case is remarkably similar to *Barnes v. Farmland National Beef Packing Co.*, 169 F. Supp. 2d 1235 (D. Kan. 2001).  There, the defendant's general counsel submitted an affidavit that disclosed the location of the defendants' four partners.  *Id.* at 1236.  The plaintiff argued that the affidavit was insufficient to establish the defendant's citizenship, and that she was entitled to limited discovery.  The district court disagreed:

> Other than complaining that the defendant's affidavit is conclusory, the plaintiff does not contest the averments made by the defendant's outside general counsel on grounds of competency, reliability, or accuracy.  Indeed, the plaintiff renders

---

shall not merely rely on the allegations in the complaint, but may resolve the disputed factual issues by weighing evidence outside the pleadings, such as affidavits and depositions." *Brocsonic Co., Ltd. v. M/V Mathilde Maersk*, No. 98 Civ. 7546(LBS), 1999 WL 413456, *2 (S.D.N.Y. Jun. 21, 1999).

3

> neither evidence nor allegations to dispute the affiant's conclusions …. As the plaintiff has failed to allege the facts necessary for subject matter jurisdiction and has failed to come forth with any reasonable basis in fact for believing that she will be able to prove diversity jurisdiction exists here, the court grants the defendant's motion to dismiss and denies the plaintiff's request to delay its ruling pending discovery on these issues.

*Id.* at 1238-39; *accord Savis, Inc. v. Warner Lambert, Inc.*, 967 F. Supp. 632, 641-42 (D. Puerto Rico 1997) ("[T]he court will not order discovery on the issue of diversity jurisdiction unless the plaintiffs have <u>already</u> provided sufficient evidence of the parties' citizenship to instill in the Court a belief that further discovery would … enable the plaintiff[s] to establish subject matter jurisdiction.") (emphasis added).

Eugenia manages to cite two cases in which district courts permitted jurisdictional discovery, *see* Opp. Memo. at 6, but both cases involve issues of <u>personal</u> jurisdiction, not subject matter jurisdiction, where the presumption against jurisdiction arguably does not apply. "The notion of personal jurisdiction is quite distinct from that of subject matter jurisdiction and the ramifications of a lack of personal jurisdiction likewise wholly unlike the consequences of a lack of subject matter jurisdiction." *Savis*, 967 F. Supp. at 641 (declining to order discovery on issue of subject matter jurisdiction). The cases that Eugenia cites are also distinguishable because the plaintiffs there had raised substantial questions regarding the existence of personal jurisdiction. By stark contrast, Eugenia has done nothing to substantiate its bare allegation of subject matter jurisdiction.

Any shred of remaining doubt about whether the Court should promptly dismiss this lawsuit is eliminated by the Reply Affidavit of Robert V. Glaser. In it, Mr. Glaser explains that MapleWood Equity <u>currently</u> has at least six separate limited partners whose principal place of business is outside of the United States: CIBC Capital Corporation (a citizen of Canada), CIBC Employee Private Equity Fund Partners (a citizen of Canada), Rippon Limited (a citizen of

4

Argentina), Hudson Global Strategies, Ltd. (a citizen Argentina), Greenpark Acquisition 1, LP (a citizen of the Channel Islands), and Greenpark Acquisition II (a citizen of the Channel Islands). *See* Glaser Reply Aff. ¶ 2. It bears mention that the acronym "CIBC" in the foregoing entities stands for "Canadian Imperial Bank of Commerce." *See* http://www.cibc.com/ca/about.html.

Finally, Eugenia argues that jurisdictional discovery is needed because <u>another</u> Judge, in <u>another</u> case, with <u>different</u> defendants, denied a motion to dismiss for lack of subject matter jurisdiction. Opp. Memo. at 3 & 5. This argument is laughable. The case in question, *Eugenia VI Venture Holdings, Ltd. v. Chabra et al.*, No. 05-Civ. 4277 (DC) (S.D.N.Y.), involved different defendants and, consequently, an entirely different jurisdictional analysis. The court there denied the defendants' 12(b)(1) motion after concluding that Eugenia's principal place of business is the Cayman Islands. *See* Karlan Decl. Exh. F. That issue has no bearing on whether MapleWood Equity's members are foreign entities, and obviously cannot invest this Court with subject matter jurisdiction.

**B.     Eugenia Has Not Pleaded a Viable Veil Piercing Claim.**

MapleWood Equity's opening memorandum demonstrates three basic propositions regarding Eugenia's "Alter Ego/Misuse of Corporate Form" claim: (1) that courts applying Delaware law are exceedingly reluctant to pierce the corporate veil; (2) that in order to proceed on its claim, Eugenia must prove, among other things, that the AMC Investor Entities were a sham and existed for no other purpose than as a vehicle for fraud; and (3) that in light of these requirements, Eugenia cannot state a veil piercing claim. *See* Memo. at 10-14 & n.6.

In response, Eugenia tries to change the subject. Eugenia sets up a strawman by insisting that alter ego claims are inherently "factual," but never addresses the substance of MapleWood Equity's arguments. *See* Opp. Memo. at 7-8. Eugenia's musings notwithstanding, alter ego

5

claims are frequently dismissed on the pleadings. Memo. at 11 (citing authorities). Notably, just <u>one</u> of the cases that Eugenia cites in its string of inapposite authorities (Opp. Memo. at 7-8) applies Delaware law, and that case involved qualitatively different – and far more compelling – allegations than those made by Eugenia. *See In re Verestar, Inc.*, 343 B.R. 444, 465 (Bankr. S.D.N.Y. 2006) (alleging that controlling owners operated subsidiary as an "incorporated pocketbook" by shielding themselves from liability while "raiding" the subsidiary's assets "at will") (cited by Eugenia).[4]

Even if Eugenia's allegations are accepted as true, it simply has not alleged facts sufficient to pierce the corporate veil. No matter how many times Eugenia repeats them, its assertions of "undercapitalization" and failure to follow "corporate formalities" (Opp. Memo. at 9-10)[5] do not get it past the pleading stage. Unless and until Eugenia alleges ultimate facts demonstrating that MapleWood Equity and the AMC Investor Entities operated as a single economic entity, *and* that MapleWood Equity used the AMC Investor Entities' corporate form <u>solely to perpetrate fraud or injustice</u>, its alter ego claim fails as a matter of law. *See* Memo. at 10-11 (citing authorities).[6]

---

[4] The non-Delaware authorities relied on by Eugenia apply a more lenient standard not utilized by Delaware courts. *Cf.* Opp. Memo. at 7-8, citing *EZ-TIXZ, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 733 (S.D.N.Y. 1996) (stating that veil piercing is available where, *inter alia*, "the entity so dominates the corporation and completely disregards the corporation's separate identity and primarily transacts its own business"); and *In re InSite Servs. Corp., LLC*, 287 B.R. 79, 97 (Bankr. S.D.N.Y. 2002) (explaining that "key requirements" of veil piercing are complete domination with respect to transaction, and that such domination was used to commit fraud or wrong).

[5] For the record, MapleWood Equity vehemently disputes Eugenia's allegations about the AMC Investor Entities' supposed lack of corporate formalities, as well as Eugenia's suggestion that the common counsel between the AMC Investor Entities and MapleWood Equity makes them "alter egos."

[6] *See also In re Sunstates Corp. Shareholder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) (plaintiff did not establish veil piercing claim because "each of [the] entities was engaged in substantial business operations and was formed or acquired … for purposes relating to the pursuit of normal business operations"); *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud. Plaintiffs merely state that the purpose of the General Partner is to manage and operate the Partnership. Plaintiffs have not stated sufficient facts that if true would justify disregarding the corporate form[.]"); *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. Sup. 2003) ("To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to

As explained in MapleWood Equity's opening memorandum, Eugenia cannot possibly allege the prerequisites of an alter ego claim, because:

- The AMC Investor Entities were clearly not created to perpetrate a sham or fraud. They existed for more than two years before the Guaranty was executed, provided a guaranty of a prior loan from a lender other than Eugenia, and were strongly capitalized before the decline of AMC Computer. *See* Memo. at 12-13.

- Eugenia's own attorneys recommended the creation and use of the AMC Investor Entities, drafted the AMC Investor Entities' governing documents, and provided legal advice with regard to their structure and operations. *See* Memo. at 5.

- Eugenia performed due diligence and satisfied itself "in its sole discretion" that the AMC Investor Entities were sufficiently capitalized before it made the loans and accepted the Guaranty. Memo. at 3-5 & 11. Eugenia also insisted that no changes be made to the AMC Investor Entities' capital structure as a condition to accepting the Guaranty, and required the AMC Investor Entities to have no other operations. *See id.* at 5.

- The AMC Investor Entities have four other shareholders, including Eugenia's affiliate, Casita, L.P, and MapleWood Offshore. *See* Memo. at 3.

Eugenia wants to convince the Court that it was unwittingly tricked into accepting the Guaranty, yet it does not dispute any of these facts. Eugenia cannot deny that it had far more control over the loans and the Guaranty than MapleWood Equity, or anyone else, ever did. In short, Eugenia's narrative is not only false, it falls well short of stating a claim for relief.

**C.    Eugenia Must Allege Its Claims With Particularity.**

It is true, as Eugenia points out, that a plaintiff is not <u>required</u> to allege "fraud" to maintain an alter ego claim. Opp. Memo. at 6-7. That said, when a claim sounds in fraud, the allegations supporting it must be stated with particularity. Rule 9(b) "is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). In other words, "a complaint

---

defraud investors and creditors. [Plaintiff] has failed to allege any facts to support such an inference.") (footnote omitted).

7

can sound in fraud under Rule 9(b) even if fraud is not an element of the cause of action." *In re Alstom S.A.*, 406 F. Supp. 2d 433, 483 n.45 (S.D.N.Y. 2005);

Eugenia's alter ego claim sounds in fraud. Eugenia alleges that MapleWood Equity "abused the AMC Investors' corporate forms <u>with the intent to avoid liability</u> to [Eugenia] for AMC's obligations under the Guaranty and this resulted in both injustice and unfairness to Eugenia." Cmplt. ¶ 38 (emphasis added); *id.* ¶¶ 23 & 37 (alleging that MapleWood "induced" Eugenia into entering the Credit Agreement, but that the AMC Investor Entities were "inadequately capitalized"); *see* Memo. at 15 n.9. In fact, just last year, Eugenia attempted to raise the same "alter ego" claim in New York state court in *Eugenia VI Venture Holdings, Ltd. v. MapleWood Equity Partners, L.P.*, Index No. 600021/06 (N.Y. Sup. Ct.), and expressly alleged "fraud" in that action. *See* Glaser Reply Aff., Exh. A (Complaint ¶ 20). The case was ultimately dismissed without prejudice. *See* Memo. at 5.

The fact that Eugenia has strategically chosen to omit the word "fraud" from its most recent Complaint in a frail attempt to avoid the requirements of Rule 9(b) is immaterial. Rule 9(b) and its heightened pleading standard applies anyway. *See In re Grumman Olson Industries, Inc.,* 329 B.R. 411, 430 (Bkrtcy. S.D.N.Y. 2005) ("Generally, a non-fraud claim will 'sound in fraud' if the claim arose out of events that the pleading describes in terms of fraud[.]").

That means that Eugenia must "(1) specify the statements that [Eugenia] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach*, 355 F.3d at 170 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see* Memo. at 15 n.5 (setting forth pleading requirements where alleged fraud consists of omissions). Eugenia must also allege "particularized 'facts that give rise to a strong inference' that [MapleWood Equity] acted with

8

fraudulent intent," *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 530 (S.D.N.Y. 2004), and allege each and every element of fraud under New York law, *see* Memo. at 16-17 & n.11.

Even a cursory examination of the Complaint shows that Eugenia has not begun to satisfy these pleading requirements. Consequently, Eugenia's claims must also be dismissed pursuant to Rule 9(b).

### III.  CONCLUSION

For the foregoing reasons, Eugenia's claims against the MapleWood Equity should be dismissed with prejudice.

**STEVENS & LEE, P.C.**


By:  /s/ Chester B. Salomon
    Chester B. Salomon (CS-2319)
    485 Madison Avenue, 20th Floor
    New York, NY 10022
    (212) 319-8500

-and-

Of Counsel:
**AKERMAN SENTERFITT**
Brian P. Miller, Esq. (admitted *pro hac vice*)
Samuel S. Heywood, Esq. (*pro hac vice* application
    to be filed)
One Southeast Third Avenue
Miami, Florida 33131
Telephone: 305-982-5626

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------- x | | |
| EUGENIA VI VENTURE HOLDINGS, LTD., | : : : : : : : : : : : : : x | 07-CIV-9417<br>(Batts, J.)<br>(Eaton, M.J.) |
| Plaintiff, | | |
| - v – | | |
| MAPLEWOOD EQUITY PARTNERS, LP, | | |
| Defendant. | | |
| ------------------------------------------------- | | |

**<u>CERTIFICATE OF SERVICE</u>**

I, Constantine D. Pourakis, Esquire, hereby certify that a true and correct copy of the foregoing reply memorandum has been served upon the following counsel of record, via electronic mailing and hand delivery on this date:

Mitchell A. Karlan, Esquire
Richie Falek, Esquire
Gibson, Dunn & Cruteher LLP
200 Park Avenue
New York, NY 10166
mkarlan@gibsondunn.com
Rfalek@gibsondunn.com

Date: December 19, 2007                               /s/ Constantine D. Pourakis

10